JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Max Goldberger

**(b)** County of Residence of First Listed Plaintiff   Camden
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari Goldberger, Esq.
ESQwire.com, P.C.
1908 Route 70 East, Cherry Hill, NJ 08003 (856) 874-9651

## DEFENDANTS

Alessandro Vinai, Andrea Vinai, Eelko van Kooten, Fadil El Ghoul, R.L.T. Smet et. al.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☒ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| | | | | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
17 U.S.C. § 101 et seq.

Brief description of cause:
Copyright Infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
07/31/2017

SIGNATURE OF ATTORNEY OF RECORD
*Ari Goldberger*

### FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**Camden**

| | |
|---|---|
| Max Goldberger, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. _____ |
| | ) |
| Alessandro Vinai, Andrea Vinai, | ) |
| Eelko van Kooten, Fadil El Ghoul, | ) |
| R.L.T. Smet and Does 1-20, | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT WITH
## JURY DEMAND

Plaintiff Max Goldberger, by undersigned counsel, hereby alleges the following against

Defendants Alessandro Vinai, Andrea Vinai, Eelko van Kooten and R.L.T. Smet (collectively,

"Defendants").

### PRELIMINARY STATEMENT

1.      This is a case of copyright infringement of Plaintiff's music composition in

violation of the Copyright Act of 1976 (as amended), 17 U.S.C. § 101 *et seq*. ("Copyright Act")

and New Jersey common law.   This action arises from Defendants' unauthorized use and

misattribution of authorship of Plaintiff's original musical composition "*Abu*" ("*Abu*" or

"Copyrighted Work").

2.      Plaintiff is an artist, composer and songwriter, who instituted this lawsuit to

invoke the protections afforded to him concerning an original work of authorship under the

Copyright Act in order to defend his position as a composer and creator of electronic music and

to defend against the willful infringement by Defendants of the Copyrighted Work, which infringement has damaged Plaintiff and denied him his livelihood.

3.      Plaintiff also seeks the recovery of monetary damages, which are allowed under Federal Copyright law.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a) and 1331, in that the action arises under the laws of the United States and more particularly the Copyright Act.  This Complaint alleges copyright infringement, contributory copyright infringement and vicarious copyright infringement arising under the Copyright Act and state common law.  This Court has subject matter jurisdiction over the federal question claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) & (b), and ancillary jurisdictions over the common law claims.  "The district courts shall have original jurisdiction of any civil actions arising under any Act of Congress relating to … copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in … copyright cases." 28 U.S.C. § 1338(a).

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendants are subject to personal jurisdiction in this district by virtue of their transacting, doing and soliciting business in this District, and because a substantial part of the relevant events occurred in this District. Additionally, Plaintiff resides in this District and has been a resident of this District during all times relevant to this action. Venue is also proper in this judicial district because Defendants have performed, played and distributed and continue to perform, play and distribute infringing music, the subject matter of this action within this district, and Plaintiff has suffered and continues to suffer irreparable harm in this District.

## PARTIES

6.    Plaintiff Max Goldberger ("Plaintiff") is a natural person, who is and at all relevant times was, a resident of Cherry Hill, New Jersey, and resided in Camden County, New Jersey.  Plaintiff is an artist, composer and songwriter.  As detailed below, in 2014 Plaintiff composed, created and recorded the electronic music composition *Abu*.

7.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Alessandro Vinai and Defendant Andrea Vinai, both individuals, are citizens of Italy and are brothers (collectively, "Vinai").

8.    Plaintiff is informed and believes, and on that basis alleges, that Vinai formed, produced and are known as the electronic musical group "*Vinai.*" Vinai and *Vinai* hold themselves out to be the creators of the electronic musical composition "*How We Party*" which infringes upon the Copyrighted Work.

9.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Eelko van Kooten ("van Kooten"), an individual, is the owner of Spinnin' Records.  Spinnin' Records is a Dutch record label and music publishing company ("Spinnin''") which signed and promoted *Vinai* and which administers the commercial exploitation of, *inter alia*, Vinai's infringing musical composition, "*How We Party*."

10.    Defendant Fadil El Ghoul is an individual who uses the stage name "R3hab" (hereinafter, "R3hab" or "Rehab").  Rehab is a Dutch disk jockey ("DJ") and record producer with whom Vinai and Defendant R.L.T. Smet collaborated and conspired to infringe Plaintiff's Copyrighted Work.

11.    Defendant R.L.T. Smet ("Smet") is a Dutch company whose address is Karariesprek 157, Vlissingen, OH, 4386 DJ, Netherlands.  According to records in the WHOIS

3

database of domain name registrations, Smet is the registrant of Rehab's internet domain name, djr3hab.com. A true and correct copy of the registration record for djr3hab.com is attached to and incorporated into this Complaint as Exhibit A.

12.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 1 through 20, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names (the "Doe Defendants"). If necessary, Plaintiff will seek leave of Court to amend this Complaint to state the Doe Defendants' true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that the Doe Defendants are liable to Plaintiff as a result of their participation in all or some of the acts and omissions herein set forth; in that, they and each of them have, owned, operated and/or supervised the operation of, and/or derived financial benefit from the activities that infringe Plaintiff's Copyrighted Work and exclusive rights as alleged herein.

13.     The acts complained of herein have arisen out of the same common scheme or plan to violate the Plaintiff's rights under the Copyright Act, or the same transaction, occurrence, or series of transactions or occurrences, and there are questions of law and fact common to all Defendants.

## GENERAL ALLEGATIONS RELEVANT TO ALL CLAIMS
### Plaintiff's Ownership of *Abu*

14.     In March 2014 Plaintiff developed his idea to compose and in fact did compose, create and record the original electronic music composition *Abu*.

15.     Plaintiff initially registered the copyright in the musical composition of *Abu* with the United States Copyright Office on March 10, 2015.   A true and correct copy of the registration is attached to and incorporated into this Complaint as Exhibit B.

4

16.     In 2014 Plaintiff uploaded his recording of *Abu* onto the internet via SoundCloud, at https://soundcloud.com/djmaxgold/noww. SoundCloud is an online audio distribution platform that enables its users to upload, record, promote, and share their originally-created sounds. By April 15, 2014 had received almost 100 downloads. As of the date of filing this lawsuit, *Abu* has received over 18,918 plays on SoundCloud. (see https://soundcloud.com/djmaxgold/noww )

## Defendants' Direct Access to and Theft of the Copyrighted Work

17.     The Ultra Electronic Music Festival in Miami, Florida ("Ultra") is this country's preeminent electronic dance music festival. In anticipation of the event, Plaintiff composed several original songs in March 2014. At the 2014 Ultra, held on March 28-30, Plaintiff placed an ice cream truck equipped with loudspeakers directly across from the main festival entrance. Photographs of Plaintiff's ice cream truck at the 2014 Ultra are attached to this Complaint as Exhibit C. The truck continuously blasted Plaintiff's original recordings, including *Abu,* through loudspeakers during both weekends of Ultra so that everyone who attended the festival heard it. In addition, Plaintiff distributed free song download cards directing individuals to download new releases by Max Gold at www.DJMaxGold.com. Among the songs offered for free download was Plaintiff's original recording of Abu. A large sign emblazoned on the truck stated: MAX GOLD – kabuki and others – OUT NOW! – Free Download – DJMAXGOLD.COM.

18.     Defendants attended, and performed at, the 2014 Ultra. Upon information and belief, they heard *Abu,* and thereafter Vinai stole this original composition and incorporated *Abu*'s melody into their subsequent compositions, including without limitation, "*How We Party.*" It is believed that Defendant further heard Abu on the Internet by accessing the music at

DJMAXGOLD.COM. A true and correct copy of an Expert Report comparing the two works is attached to and incorporated into this Complaint as Exhibit D.

19.     Before Defendants obtained access to *Abu* at the 2014 Ultra, *Vinai*'s music sounded very different and they received only a few million plays by DJs. Vinai's earlier release "*Bounce Generation,*" for example, does not even have a melody. However, after the 2014 Ultra, and hearing Plaintiff's music,   Vinai's sound took on a whole new character With "How We party," sounding less like Defendant, and much like Plaintiff,  more specifically, like *Abu.* Following this transformation, Vinai' post-Ultra tracks have received over 17 million plays, as further described below.

<u>**Defendants' Infringing Activities**</u>
***"How We Party"***

20.     Vinai's so-called composition "*How We Party*" copies, interpolates, and highly features the melody, underlying music and beat of *Abu*, and thus both compositions contain a qualitatively distinct, important and original portion of *Abu*. The use of *Abu* in "*How We Party*" is readily apparent, and constitutes, *inter alia*, the creation of an infringing and unauthorized derivative work.

21.     Beginning in approximately August 1, 2014 and continuing to this very day, Defendants caused *Vinai*'s recordings of  the infringing composition "*How We Party*" to be posted, played and promoted on the Internet, including at the following links by Spinnin': https://soundcloud.com/spinninrecords/r3hab-vinai-how-we-party-original-mix, https://www.youtube.com/watch?v=TL1ByAIf8Ck,        https://pro.beatport.com/track/how-we-party-original-mix/5641903,    https://pro.beatport.com/release/how-we-party/1346376;    at the following    links    by    Rehab:    https://soundcloud.com/r3hab/r3hab-vinai-how-we-party,

https://www.youtube.com/watch?v=2v8n0jy70yk;        and        by        Vinai        at
https://soundcloud.com/wearevinai/r3habvinaihowweparty/

22.     The  posting alone shows 14 million plays, and the SoundCloud posting has 2.66 million listens.

23.     Vinai's success and popularity has exploded since the release of How We Party, being listed thereafter by in the Top 100 DJ's by DJ Mag, debuting in 2014 and climbing to number 43 in 2015 and 37 by 2016.

24.     Beginning in approximately August 1, 2014 *Vinai* performed live their infringing composition "*How We Party*" on numerous occasions and at a variety of popular dance clubs, music festivals, and other venues, including without limitation, the 2015 Ultra Electronic Music Festival in Miami Florida, Tomorrowland, Isle of Dream, Switzerland on October 8, 2014, the Vanilla Club, Jesolo, Italy, Savoyon September 25, 2014, and in Atlantic City on March 7, 2015.

25.     Videos of some of these live performances by *Vinai* are posted on youtube.com, including        without        limitation,        at        the        following        links:
https://www.youtube.com/watch?v=4qZjjqwer34,
https://www.youtube.com/watch?v=JiVFcMhs67k,
https://www.youtube.com/watch?v=HTBfARgqWJs,
https://www.youtube.com/watch?v=CJGNr87bTiw.

26.     Other live sets of *Vinai*'s infringing compositions are posted or described at the following internet links:

   a.   http://turnupthebass.net/2014/07/29/top-10-tomorrowland-future-anthems/

   b.   https://soundcloud.com/rudee-jordach/r3hab-live-mainstage-tomorrowland-belgium-2014-07-20

c. https://soundcloud.com/tomorrowland2014sets/ww-live-tomorrowland-2014-day-6-belgium-27-07-2014

d. https://soundcloud.com/boupas/will-sparks-tomorrowland-2014

e. https://soundcloud.com/edmtv8/sander-van-doorn-identity-246-live-tomorrowland-2014-15-08-2014

f. http://bestlivesets.com/calvin-harris-live-at-lollapalooza-2014-day-2-chicago-02-aug-2014/

g. https://soundcloud.com/borgeousmusic/borgeous-live-electric-zoo-2014.

27.     This is not the first time Vinai stole another songwriter's work.  As described in an internet article posted and supported at http://www.edmghostproducer.com/dimitri-vegas-like-mike-vinai-stole-louder/, Vinai also stole the melody for their composition "*Louder.*"

28.      Defendants knew or should have known that the Copyrighted Work could not be used in a musical work by *Vinai* without a license therefor, as is customary in the industry, yet never sought a license or other permission.

29.     In addition to the infringing live performances and internet postings described and documented above, Defendants' infringing acts include, but are not limited to, unlawfully creating, recording, manufacturing, producing, selling, licensing, marketing and distributing the musical composition and sound recording of "*How We Party.*"  Defendants' infringement constitutes unlawful appropriation of the Copyrighted Work.

30.     "*How We Party*" is *Vinai*'s greatest hit, and has sold millions copies as of July 28, 2017, has, upon information and belief been downloaded over three million times, and received more than 17 million plays by DJs by DJs and Internet users.   Defendants, and each of them, have profited on the significantly increased song downloads, club bookings, and YouTube

8

and Soundcloud advertisements, all of which are attributable to Defendants' infringing use of the Copyrighted Work.

31.     Defendants have exploited the song *"How We Party"* in this District, in the State of Florida, throughout the United States and throughout the world by reproducing, preparing derivative works, distributing, publically performing, and otherwise exploiting *"How We Party"*: upon information and belief (i)  by licensing for streaming on the internet; (ii) by posting and authorizing downloads on the internet in return for advertising revenue; (iii) by synchronizing with video; (iv) by playing on the radio; and (v)  by performing these songs and derivative thereof publicly during live concerts and licensing its use to third parties.

32.     The infringement is continuing, as *"How We Party"* continues to be recorded, performed, played, downloaded, and distributed for use in various configurations to this very day

33.     As a result of Defendants' foregoing acts, Plaintiff has incurred and continues to incur significant damages. Defendants' unauthorized exploitation of *Abu* by Vinai's infringing composition and any derivatives thereof, is in derogation of, and injurious to, Plaintiff's rights as owner of the copyright in and to *Abu*, all to Plaintiff's substantial damage.

34.     Plaintiff has engaged the undersigned counsel and agreed to pay counsel reasonable attorney's fees for all services rendered in this action.

## COUNT I
## INFRINGEMENT OF COPYRIGHT IN PLAINTIFF'S COPYRIGHTED WORK
### (By Plaintiff Against All Defendants)

35.     Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

36.    Plaintiff is, and at all relevant times has been, copyright owner under United States copyright law with respect to the musical composition entitled "*Abu*" which is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.

37.    Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce and distribute the copyrighted materials to the public and to prepare derivative works.

38.    Defendants, without the permission or consent of Plaintiff, have reproduced and distributed Plaintiff's Copyrighted Work to the public. Defendants have no license or any other form of permission to use, copy, reproduce, distribute or create derivative works of *Abu*. By copying, performing, distributing, synchronizing, creating derivative works, licensing and exploiting "How We Party," Defendants have infringed Plaintiff's exclusive rights in the musical composition *Abu*.    Defendants' actions constitute infringement of Plaintiff's copyright and exclusive rights under the copyright.

39.    Plaintiff is informed and believes that the foregoing acts of infringement have been willful and intentional, in utter disregard of and with indifference to the rights of Plaintiff. Defendants have profited substantially from their infringing activities, have collected, and continue to collect, fees and royalties from the sale of the infringing work or any derivatives thereof, and from Internet advertising, and have retained a portion of those fees and royalties without submitting any amount to Plaintiff. Defendants should be held jointly and severally liable for all profits derived as a result of their infringing activities as practical partners.

40.    As a result of Defendants' willful infringement of Plaintiff's copyright and exclusive rights under copyright, he is entitled to maximum statutory damages pursuant to 17 U.S.C. § 504(c) or to recover his actual damages and profits attributable to the infringement

10

pursuant to 17 U.S.C. § 504(b), at Plaintiff's election, and such other relief as is provided by law. Plaintiff is further entitled to his attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

41.     Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright.

## COUNT II
## CONTRIBUTORY INFRINGEMENT OF COPYRIGHT
### (By Plaintiff Against All Defendants)

42.     Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

43.     Plaintiff is informed and believes, and based thereon alleges,  that Defendants have engaged in the business of systematically authorizing, aiding and abetting, and/or materially contributing to the manufacture, reproduction, adaptation, and/or distribution, within the United States, of unauthorized recordings or compilations of Plaintiff's Work.

44.     The aforesaid acts on the part of Defendants, and each of them, have induced, caused, and materially contributed to the other Defendants' infringement of Plaintiff's copyright and exclusive rights under copyright in the Copyrighted Work.

45.     The acts of each of the Defendants complained of herein constitute contributory infringement of Plaintiff's copyright and exclusive rights under copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

46.     Plaintiff is informed and believes, and based thereon alleges, that Defendants' acts of infringement were willful, intentional, and purposeful, in disregard of and indifference to the rights of Plaintiff.

47.     As a direct and proximate result of the contributory infringements by Defendants of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to damages in an

amount to be proven at trial, but which Plaintiff cannot presently ascertain or compute. If necessary, Plaintiff will seek leave to amend this Complaint to state the full amount of such damages and profits when such amount has been ascertained.

48.     By reason of all of the foregoing facts, Plaintiff also is entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504, for each separate infringement. In connection therewith, Plaintiff is entitled to an accounting of all gross proceeds received by Defendants, directly or indirectly, from all uses of their infringing recordings and compilations of Plaintiff's Copyrighted Work, and request is hereby made that the Court order Defendants to render such an accounting of, and a constructive trust for the benefit of Plaintiff with respect to, such profits.

49.     Alternatively, Plaintiff is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $ 150,000 from each Defendant for each infringement of Plaintiff's Copyrighted Works, for Defendants' willful infringement of Plaintiff's copyright and exclusive rights under copyright in Plaintiff's Copyrighted Work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

50.     Plaintiff is further entitled to an award of his attorney's fees and full costs pursuant to 17 U.S.C. § 505.

51.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial injury and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in and to Plaintiff's Copyrighted Work. Plaintiff is therefore entitled to the issuance of a permanent injunction as against Defendants, and each of them, from engaging in their wrongful acts, all as alleged herein.

**COUNT III**
**VICARIOUS INFRINGEMENT OF COPYRIGHT**
**(By Plaintiff against Defendants Eelko van Kooten, Fadil El Ghoul, R.L.T.**
**Smet and Does 1 through 20 inclusive)**

52.     Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

53.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants van Kooten, Ghoul, Smet and Does 1 through 20, inclusive, and each of them, were in a position to supervise and/or control the conduct of Vinai or their employees, agents, and other persons acting on behalf of Vinai, that Defendants van Kooten, Ghoul, Smet and Does 1 through 20, inclusive, and each of them, failed to exercise such supervision and/or control, and that as a direct and proximate cause of such failure, Defendants van Kooten, Ghoul, Smet and Does 1 through 20, inclusive, and each of them, have infringed Plaintiff's copyright and exclusive license rights in and to Plaintiff's Work, as alleged above.

54.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants van Kooten, Ghoul, Smet and Does 1 through 20, inclusive, and each of them, derived direct and substantial financial benefit from the infringements of Plaintiff's Copyrighted Work by Vinai as alleged above, in that, among other things, some or all of the profits that Vinai derived from such infringing conduct were conveyed to Defendants van Kooten, Ghoul, Smet and Does 1 through 20, inclusive.

55.     Plaintiff is informed and believes, and based thereon alleges, that the aforesaid acts on the part of Defendants van Kooten, Ghoul, Smet and Does 1 through 20, inclusive, and each of them, were willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

56.     As a direct and proximate result of the vicarious infringements by Defendants van Kooten, Ghoul, Smet and Does 1 through 20, inclusive, of Plaintiff s copyright and exclusive rights under copyright, Plaintiff is entitled to damages in an amount to be proven at trial, but which Plaintiff cannot presently ascertain or compute. If necessary, Plaintiff will seek leave to amend this complaint to state the full amount of such damages and profits when such amount has been ascertained.

57.     By reason of all of the foregoing facts, Plaintiff also is entitled to said Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504, for each separate infringement. In connection therewith, Plaintiff is entitled to an accounting of all gross proceeds received by said Defendants, directly or indirectly, from all uses of the unlawfully infringing compositions by Vinai, and request is hereby made that the Court order said Defendants to render such an accounting of, and a constructive trust for the benefit of Plaintiff with respect to, such profits.

58.     Alternatively, Plaintiff is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $ 150,000 from each Defendant for each infringement of Plaintiff's Work, for said Defendants' willful infringement of Plaintiff's copyright, or such other amounts as may be proper under 17 U.S.C. § 504(c).

59.     Plaintiff is further entitled to an award of his attorney's fees and full costs pursuant to 17 U.S.C. § 505.

60.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial injury and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in and to Plaintiff's Copyrighted Work. Plaintiff is therefore entitled to the issuance of a permanent

injunction as against Defendants, and each of them, from engaging in their wrongful acts, all as alleged herein.

## COUNT IV
## COMMON LAW INFRINGEMENT OF COPYRIGHT IN PLAINTIFF'S COPYRIGHTED WORK
### (By Plaintiff Against All Defendants)

61.     Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and affect as if fully restated herein.

62.     Plaintiff's original composition and sound recordings of *Abu* are subject to common law copyright protection under the law of New Jersey. As the owner of valid common law copyrights in the composition and sound recordings of *Abu*, Plaintiff possesses the exclusive rights to manufacture, copy, sell, distribute, and otherwise exploit them.

63.     Plaintiff has not granted or licensed to Defendants the right to use, copy or distribute the original composition or sound recordings of *Abu* in any manner, including by digital transmission. Defendants' copying, recording, performances and dissemination of *Abu* as described herein therefore constitutes infringement of Plaintiff's common-law copyright rights

64.     As a direct and proximate result of Defendants' wanton and reckless copyright infringement, Plaintiff is entitled to compensatory damages in such amounts as will be proven at trial, as well as punitive damages.

65.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured in money damages. Plaintiff has no adequate remedy at law and is entitled to injunctive relief prohibiting Defendant from further violating Plaintiff's rights in the *Abu* original composition and sound recordings.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Max Goldberger prays as follows:

A. For a judgment pursuant to 17 U.S.C. § 501 that Defendants have infringed Plaintiff's copyright in *Abu;*

B. For an entry of a permanent injunctive relief pursuant to 17 U.S.C. § 502 enjoining and restraining Defendants, their  offices, directors, agents, servants, employees and all other persons in privity or acting in concert with them from further infringing Plaintiff's Copyrighted Work, by directly or indirectly using, selling, offering to sell, licensing, offering to license, disclosing, distributing, or making derivatives, thereof;

C. For entry of relief impounding and/or destruction of all infringing articles and derivatives thereof, pursuant to 17 U.S.C. § 503;

D. For a finding that the infringement by Defendants was willful, and for an award that accounts for their willful infringement, pursuant to 17 U.S.C. § 504;

E. For an accounting of all of Defendants' profits attributable to the infringement, including both direct profits and indirect profits in the form of sales, conveyed sales, and licensing of infringing works and derivatives thereof, pursuant to 17 U.S.C. § 504;

F. For an award to Plaintiff of his actual damages and any additional profits of Defendants pursuant to 17 U.S.C. § 504;

G. For an award of Plaintiff's attorneys' fees, expenses and costs of suit incurred as a result of this lawsuit;

H. For an award to Plaintiff of such other and further relief as this Court deems just and proper under the circumstances.

DATED:  July 31, 2017

Respectfully submitted,

Ari Goldberger, Esq
Jason Schaeffer, Esq
ESQwire.com, P.C.
1908 Marlton Pike East
Cherry Hill, NJ 08003
(856) 874-9652
(856) 874-9182 fax
ari@esqwire.com

**Mail body: New**

VERIFICATION

I, Max Goldberger, hereby certify that

1.    I am the creator of the original compositions Abu, and plaintiff in this action,

2.    I have reviewed the foregoing Verified Complaint

3.    I verify under penalty of perjury that the facts set forth in the Verified Complaint are true and co
rrect to the best of my knowledge.

Executed on July 31, 2017 in Manhattan , NYC.

Max Goldberger

Email secured by Check Point

**EXHIBIT A**



Secure | https://who.is/whois/djr3hab.com

★ Bookmarks   Outlook Web App   GFI MailArchiver   vSphere Web Client   PACER Login   District o

who.is

Premium Domains   Transfer   Features   Login   Sign Up

## djr3hab.com
whois information

Whois | Website Info | History | DNS Records | Diagnostics

cache expires in 1 days, 0 hours, 0 minutes and 14 seconds

### Registrar Info

| | |
|---|---|
| Name | TUCOWS, INC |
| Whois Server | whois.tucows.com |
| Referral URL | http://tucowsdomains.com |
| Status | clientTransferProhibited https://icann.org/epp#clientTransferProhibited clientUpdateProhibited https://icann.org/epp#clientUpdateProhibited |

### Important Dates

| | |
|---|---|
| Expires On | 2018-07-30 |
| Registered On | 2009-07-30 |
| Updated On | 2017-07-01 |

### Name Servers

| | |
|---|---|
| NS1.HOSTNET.NL | 31.184.1.10 |
| NS2.HOSTNETBV.COM | 31.184.6.20 |
| NS3.HOSTNETBV.NL | 95.211.175.15 |

### Similar Domains

djr3hab.co | djr3hab.com | djr3hab.net | djr3hab.tv |

### Registrar Data

🔒 Make Private

```
Registrant Contact Information:
  Name                    R.L.T. Smit
  Organization            RLT Smit
  Address                 Kanarieropron: 157
  City                    Vlissingen
  State / Province        ON
  Postal Code             4386 DD
  Country                 NL
  Phone                   +31.641408491
  Email                   domeinretlostnet.nl

Administrative Contact Information:
  Name                    R.L.T. Smit
  Organization            RLT Smit
  Address                 Kanarieroprom 157
  City                    Vlissingen
  State / Province        ON
  Postal Code             4386 DD
  Country                 NL
  Phone                   +31.641408491
  Email                   domeinretlostnet.nl

Technical Contact Information:
  Name                    R.L.T. Smit
  Organization            RLT Smit
  Address                 Kanarieroprom 157
  City                    Vlissingen
  State / Province        ON
  Postal Code             4386 DD
  Country                 NL
  Phone                   +31.641408491
  Email                   domeinretlostnet.nl
```

Information Updated: 2017-07-31 15.02.55

### Site Status

| | |
|---|---|
| Status | Active |
| Server Type | nginx |

### Suggested Domains for djr

- djr3hab.rocks
- djr3hab.social
- djr3hab.live
- djr3hab.site
- djr3hab.xyz

Purchase Selected Domain

Find the perfect domain for y

name.com

name.com

We make it easier
for you to make m

High-volume pricing
Simpler, faster transfers
Bulk management and sales
Seslo and Afternic integration

Try our bulk search tool

© 2016 Who.is in partnership with Name.com

Transfers   Premium Domains   Web Hosting   Website Builder   Contact Us   FAQs   T
Service

**EXHIBIT B**

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = goldberger, max
Search Results: Displaying 1 of 4 entries

▲ previous       next ▼

*Abu.*

Labeled View

▲ previous       next ▼

**Type of Work:** Music

**Registration Number / Date:** PAu003760369 / 2015-03-10

**Application Title:** Abu.

**Title:** Abu.

**Description:** Compact disc.

**Copyright Claimant:** Max Goldberger. Address: 35 Cameo Drive, Cherryhill, NJ, 08003.

**Date of Creation:** 2014

**Authorship on Application:** Max Gold, pseud. of Max Goldberger, 1996- (author of pseudonymous work); Citizenship: United States. Authorship: music.

**Copyright Note:** C.O. correspondence.

**Names:** Goldberger, Max, 1996-
Gold, Max, pseud.

---

Save, Print and Email (Help Page)
Select Download Format   Full Record ▼   Format for Print/Save

Enter your email address: _____   Email

**EXHIBIT C**



**EXHIBIT D**

## I. Qualifications

I was born in Königs Wusterhausen of the German Democratic Republic and I was educated at the State High School for Music in Wernigerode as a member of the Radio Youth Choir. I studied composition and piano at the Conservatory of Music "Carl Maria von Weber" in Dresden from 1990 to 1994, graduating with a Diploma. I received the Master of Music degree in 1996 from the Shepherd School of Music at Rice University in Houston, Texas. From 1996 to 1999 I pursued my composition studies at Manhattan School of Music in New York City, where I was a candidate for the Doctor of Musical Arts degree. In the fall of 1999, I was a Visiting Researcher at Seoul National University's College of Music in the Republic of Korea. I have attended master classes in composition and vocal accompanying in Germany, Austria, and the Czech Republic, and the U.S.

I have taught Vocal Accompanying at the Conservatory of Music and Theater in Rostock, Germany during the summer semester of 2000. In the fall of 2000, I joined the theory faculty at Manhattan School of Music as a full time faculty member. In 2005, I became a member of the composition faculty and was appointed department chair of theory. I have also appeared as a guest faculty and lecturer at universities and conservatories in China (Beijing, Shenyang, Changchun), Colombia (Bogotá, Medellín), Germany (Berlin, Dresden, Leipzig, Magdeburg, Rostock), Italy (Rome), Korea (Seoul), Russia (Moscow), and the United States (Baltimore, Brooklyn, Hempstead, New York, Oberlin, Princeton).

I have received numerous awards, scholarships, grants, and prizes (the first prize in the International Competition for Choral Composition in Dresden, Germany, among others) in both Europe and the U.S. My publications include compositions and analytical papers (Verlag Kamprad Altenberg, Abundant Silence Publishing Denver, Schott Music International Mainz, Guitar Review New York, Red Light Press New York, Carus Verlag Stuttgart, Edition Music Contact Werdau, *Ashgate Research Companion* Surrey/UK). My compositions and arrangements have been broadcasted on radio (Bavarian Radio BR, German Radio DF, German Culture Radio DRK, Middle German Radio MDR, North German Radio NDR, West German Radio WDR, WQXR) and television (ARD, Second German Television ZDF, Königs Wusterhausen Radio KWTV), and released on CDs at the Bayrischer Rundfunk, Deutsche Schallplatten, New Focus, OehmsClassics, Phonica, Talanton, and Rachel Payne labels.

I am active as a composer, pianist, vocal accompanist, and educator. I have appeared at many prestigious venues (e.g. Weill Recital Hall, Zankel Hall at Carnegie Hall, and Park Avenue Armory in New York, Semper Opera House Dresden, Cathedral in Coventry) and festivals in Austria, Belgium, Bulgaria, Croatia, Czech Republic (Ostrava Days of New Music), England, France, Germany (Middle German Radio MDR Music Summer Festival, Days of Contemporary Music Dresden), Greece, Iceland, Italy, Latvia, Luxemburg, Norway, Romania, Russia, Spain, Uzbekistan, China (Beijing Modern Music Festival), South Korea, Columbia, and the U.S. My compositions and arrangements have been performed all over Europe, Asia, and America by acclaimed soloists (Miranda Cuckson, Dan Lippel), chamber ensembles (ICE Ensemble New York, Ensemble courage Dresden), vocal ensembles (Singer Pur Munich, Amarcord Leipzig, Calmus Leipzig), choruses (Radio Choir Berlin, RIAS Chamber Choir Berlin, Dresden Chamber Choir), and orchestras (Janacek Philharmonic Orchestra Ostrava, Dresden Baroque Orchestra, Sinfonietta Dresden).

More information about me can be found at www.reiko-fueting.de.

## II. Project and Methodology

I was asked by the law firm Greenberg & Lieberman LLC to determine whether the composition *How We Party* by R3HAB & VINAI took original material from the composition *ABU* by Max Gold without permission and credit.

One of my areas of expertise is musical analysis, an area in which I teach on a collegiate level (Manhattan School of Music, as well as lectures and presentations at other music conservatories, universities, and conferences) and publish (analytical articles in music-theoretical publications). Musical analysis dissects a musical composition and discusses its parameters (such as pitch, melody, harmony, rhythm, meter, dynamics, timbre, orchestration) independently and objectively.  The procedure attempts to extract principles on which the music is based.  Ultimately, these musical parameters are related to the musical form of the composition.  I am applying these analytical procedures to my comparison between *ABU* and *How We Party* by focusing on the following musical parameters:

1. Pitch:
     Pitch analysis investigates the melodic intervals, the contour of the melody, and its form.

2. Harmony:
     Harmonic analysis investigates the underlying harmonic layer that accompanies the melody. The analysis is commonly done with Roman Numerals.

3. Rhythm:
     Rhythmic analysis investigates the specific rhythmic values of a melody.

4. Meter:
     Metric analysis investigates the relationship of the rhythmic values to the meter.

5. Form:
     Formal analysis relates those aspects to time and unfolding of the material.

Other important musical aspects are:
     Tempo, key, texture, register, characteristic moments, unfolding of the material, form.

I will compare both compositions objectively before making any conclusion.

Both *ABU* and *How We Party* exist only as recordings; there is no musical score.  I listened to both compositions multiple times.  I also transcribed some of the musical elements to music notation, in order to create a visual representation of the music as well, which would facilitate any comparison.

### III. Analytical Discussion

### 1. Tempo

Tempo is defined as the distance between steady pulses, referred to as beats. Tempo is represented by a number, which indicates the number of beats per minute. The traditional metronome ranges from 40 to 208, creating a total of 39 tempo degrees (40, 42, 44, etc.). Modern electronic metronomes (such as apps) range from as low as 30 to as high as 250, with a total of more than 220 tempo degrees (30, 31, 32, etc.).

The tempo of *ABU* is a metronome marking of a quarter note equaling 128 (MM = 128), which translates to 128 beats per second.

The tempo of *How We Party* is a metronome marking of a quarter note equaling 128 (MM = 128), which translates to 128 beats per second.

The tempo of *ABU* is identical with the tempo of *How We Party.* With the total number of possible tempi being more than 220, the identical tempo of both compositions is a striking aspect.

### 2. Key

Tonality is a system that is based on scales consisting of seven notes. The two scales found in tonality are the major and the minor scale. Within tonality, there are twelve major keys and twelve minor keys, the total being twenty-four. Within the tuning system of equal temperament – today's standard – all 24 keys sound identical except for their different pitch content. Vocal music often excludes various keys because of their impracticability in regards to the human vocal range. Non-vocal music, especially music not generated by instruments but by technology, does not exclude keys to the same extent. Therefore, the identical tempo of both compositions is a striking aspect as well.

The key of *ABU* is f-sharp minor.

They key of *How We Party* is f-sharp minor.

The key of *ABU* is identical with the key of *How We Party.* With the total number of possible keys being 24, the identical key of both compositions is a striking aspect.

### 3. Main Motif

A motif is the smallest musical unit. It primarily consists of a collection of notes with a distinct rhythm (pitch content vs. rhythmic content/metric structure). The next larger musical unit is a melody, which consists of various motifs, which are mostly variations – and occasionally contrasts – of the main motif.

Both compositions are almost exclusively based on a main melody. Exhibit 1A represents the main melody of *ABU*. Exhibit 1B represents the main melody of *How We Party*.



Exhibit 1A: *ABU*

Exhibit 1B: *How We Party*

Each melody is based on a main motif.



Exhibit 2A: *ABU*

Exhibit 2B: *How We Party*

### 3.1. The Pitch Content of the Main Motif

The pitch content of the main motif of *ABU* is extensive; it consists of thirteen notes and four pitches. Its register is the second octave above middle C. Its range is narrow and outlines a mainly descending motion. The motif starts on the seventh scale degree, and it ends on the fourth scale degree. The motion is entirely stepwise. Its most distinctive aspect is the repeated note in the middle (six times).

The pitch content of the main motif of *How We Party* is extensive; it consists of fourteen notes and four pitches. Its register is the second octave above middle C. Its range is narrow and outlines a mainly descending motion. The motif starts on the seventh scale degree, and it ends on the fifth scale degree. The motion is entirely stepwise. Its most distinctive aspect is the repeated note in the middle (six times), which is echoed by another repetition of the same note later in the motif (three times).

The first ten notes of the motif are identical. The 11th and 12th note of *ABU* correspond to the 13th and 14th note of *How We Party*. The shift of location is a result of the second repetition of the note c-sharp. The fact the *How We Party* does not last 15 notes (13 notes plus the two repeated notes of the second repetition) is a result of the different ending note (cadence). *ABU* ends on the fourth scale degree (the subdominant), whereas *How We Party* ends on the fifth scale degree (the dominant), the second to last note of the main motif of *ABU*.

The following exhibit outlines the deviations between both motifs based on analytical stages. Analytical stages are an analytical procedure developed by German musicologist Ulrich Siegele. This procedure recreates evolutionary stages that focus on specific musical parameters. This procedure allows the exhibition of the degree of relationship through the number of analytical stages. Few analytical stages would be a representative of a close relationship, whereas many analytical stages would be a representative of a distant relationship.

Stage 1 is the main motif of *ABU* with its characteristics as discussed above.

Stage 2 includes the second repetition of the note c-sharp (now three times).

Stage 3 eliminates the last note; it is the main motif of *How We Party* with its characteristics as discussed above.

There is only one evolutionary (analytical) stage between both motifs. This proves that both motifs are extremely closely related. <u>The pitch content of the motif of *ABU* is almost identical with the pitch content of the motif of *How We Dance.*</u> With a basically infinite number of possible pitch motifs, the almost identical pitch motif of both compositions is a striking aspect.

The interesting difference is the difference in cadence: the last note. Ending on the fifth scale degree – the dominant – is very common in tonal music: the musical term is "half-cadence". Ending on the fourth scale – the subdominant – is very uncommon in tonal music: there is no musical term for this kind of cadence. By ending the motif on the fifth scale degree, the motif becomes more generic. As shown later, this notion of creating a more generic musical surface exists repeatedly, and is therefore established as a principle.

Exhibit 3A: Stage 1: *ABU*



Exhibit 3B: Stage 2



Exhibit 3B: Stage 3: *How We Party*



## 3.2. The Rhythmic Content of the Main Motif

The rhythm of the main motif of *ABU* consists almost entirely of eighth notes, except for the first two sixteenth notes.

The rhythm of the main motif of *How We Party* consists almost entirely of eighth notes, except for the first two sixteenth notes. The motif if followed by a rest.

<u>The rhythmic content of the motif of *ABU* is almost identical with the rhythmic content of the motif of *How We Party*, except that the motif of *How We Party* is one note longer.</u> With a basically infinite

number of possible rhythmic motifs, the almost identical rhythmic motif of both compositions is a striking aspect.

Exhibit 4A: *ABU*

Exhibit 4B: *How We Party*

### 3.3. The Metric Structure of the Main Motif

The motif of *ABU* lasts six beats. The sixteenth notes are placed on the first beat, the downbeat. Each beat lasts one quarter note. Beats are differentiated as alternating strong and weak beats.

The motif of *How We Party* lasts eight beats, which can be divided into two measures of four beats each. The difference in length is a result of the different number of notes but also by the placement of the two sixteenth notes, which are located between beat 1 and 2. The first half of any beat is considered strong, whereas the second half of each beat is considered weak.

The meter of *ABU* is different from the meter of *How We Party*.

Exhibit 5A: *ABU*



Exhibit 5B: *How We Party*

The discrepancy between an identical rhythm and a different meter is interesting. The result of presenting the same rhythm in a different metrical environment is the second example of creating a more generic rhythmic/metric musical surface. Naturally, and therefore commonly, the two sixteenth notes would be placed on a week location (as an upbeat figure), which is what *How We Party* does.

Besides the different placement of the main motif, there is a third example of this principle. In *ABU*, each phrase lasts six beats. Beats are differentiated as strong and weak beats, making two beats a pair. The number of pairs is three, which is an odd number, and therefore not entirely suitable for dancing. *How We Party* uses phrases that last eight beats. Here the number of pairs is four, an even

number, which is suitable for dancing.  Therefore, the length of phrases is also more generic.  The minor differences between *ABU* and *How We Party* are based on a principle, which aims to create a more generic musical surface.

### 4. Form of the Main Melody

*ABU* is based on a melody that lasts four measures, divided into (1+1) + (1+1).  All four measures are closely related (A).  Measure 1 and 3 (A1 and A2) are almost identical (the first note is missing in A2).  Measure 4 is a variation of measure 2 (A'1 and A'2).  The cadence is measure 2 is a half cadence (ending on the dominant), whereas the cadence in measure 4 is an authentic cadence (ending on the tonic).  The phrase structure is therefore 2+2, which each 2 measure phrase consisting of two motifs; it is a parallel period.

*How We Party* is based on a melody that lasts four measures, divided into (2+2).  A1 ends on a half-cadence, A2 (a variation of A1) ends on an authentic cadence.  A2 slows down the rhythm toward the end, which is the case for A'1 and A'2 of How We Dance.  The phrase structure is therefore 2+2; a parallel period.

<u>The form of the main melody of *ABU* is identical with the form of the main melody of *How We Party*, except that the main melody of *ABU* consists of four motifs, whereas the main melody of *How We Party* consists of two motifs.</u>



Exhibit 6A: *ABU*

Exhibit 6B: *How We Party*

A fourth example of the principle to create a more generic musical surface would be the omission of the *ABU*'s phrase A' in *How We Dance*.  A' in *ABU* is based on the harmonic minor scale, which is rare in Western music, but common in Middle Eastern music.  This fraction of the harmonic minor scale is very characteristic (just like the displaced sixteenth notes and the six beat phrases); its omission in *How We Dance* creates a more generic musical surface.

### 5. Harmony

The key of both compositions is f-sharp minor.  In *ABU,* the main melody is accompanied with only one chord: the tonic (f-sharp minor) chord.  *ABU* is based on a two-voice texture that outlines the melody and a bass line without any middle voices.  The bass line is outlining a descending, starting at the 5th and ending on the 2nd scale degree.  Nevertheless, the harmonic rhythm is entirely static as only one chord is implied.

In *How We Party*, the main melody is accompanied with only one chord as well: the tonic (f-sharp minor) chord. *How We Party* is also based on a two-part texture that outlines the melody and a bass line without any middle voices. The bass line does not change as it consists entirely of the root of the tonic triad. This characteristic serves as a fifth example that *How We Party* is more generic than *ABU* as it uses a simpler bass line for the same harmonization.

The harmonization of the main melody of *ABU* is identical with the harmonization of the main melody of *How We Party.* With infinite number of possible harmonizations, the identical harmonization of the main melody of both compositions is a striking aspect.

The texture of the main melody of *ABU* is identical with the texture of the main melody of *How We Party.* With infinite number of possible textures, the identical harmonization of the main melody of both compositions is a striking aspect.

Exhibit 7A: *ABU*



Exhibit 7B: *How We Party*



## 6. The *glissando* Gesture

*ABU* includes a very characteristic gesture that appears frequently: an ascending *glissando*. The *glissando* can be a white noise *glissando* or a pitch *glissando*. The number of occurrences can be seen in the chart under "Form and Unfolding of the Material".

*How We Party* includes a frequently appearing ascending *glissando* as well. The *glissando* can be a white noise *glissando* or a pitch *glissando*. The number of occurrences can be seen in the chart under "Form and Unfolding of the Material".

The frequent occurrences of an ascending *glissando* in both compositions is a striking aspect.

## 7. Form and Unfolding of the Material

*ABU* is primarily based on its main melody.  The melody is presented in various ways.  It is presented fragmented, and it is presented complete.  It is also presented with and without accompaniment (bass line and beat).  The material neither develops nor evolves.

The form of the piece is binary, with both sections being identical.  Each section is divided into two subsections.  Each subsection states the main melody three times, which is an irregular number of statements.

**I.**

0:00 – 0:20                  **Introduction** (white noise glissando up and down)

**A**

0:20 – 0:31      Main Melody, fragmented, without bass line, without beat (white noise glissando up)
0:31 – 0:42      Main Melody, with bass line, without beat (white noise glissando up)
0:42 – 0:54      Main Melody, with bass line, with beat

0:54 – 1:11               **Bridge** (pitch glissando up)

**B**

1:11 – 1:22      Main Melody, without bass line, with beat
1:22 – 1:34      Main Melody, without bass line, with different beat
1:34 – 1:45      Main Melody, without bass line, with beat (pitch glissando up)

**II**

1:45 – 1:50               **Bridge** (white noise glissando up)

**A**

1:50 – 2:01      Main Melody, fragmented, without bass line, without beat (white noise glissando up)
2:01 – 2:13      Main Melody, with bass line, without beat (white noise glissando up)
2:13 – 2:24      Main Melody, with bass line, with beat

2:24 – 2:41               **Bridge** (pitch glissando up)

**B**

2:41 – 2:52      Main Melody, without bass line, with beat
2:52 – 3:03      Main Melody, without bass line, with different beat
3:03 – 3:14      Main Melody, without bass line, with beat (pitch glissando up)

3:14 – 3:21               **Extroduction** (white noise glissando down)

*Hwo We Party* is primarily based on its main melody as well.  The melody is presented in various ways. It is presented fragmented, and it is presented complete.  It is also presented with and without accompaniment.  The material neither develops nor evolves.

The form of the piece is ternary, with the second and third section being identical.  The first sections states the main melody once, the second and third section state the main melody twice.

The form includes one section that is based on different motivic material, a bridge section that lasts from 1:51 to 2:05.  It shares the same tempo and key with the rest of the composition, but the motivic material is unrelated.

| | |
|---|---|
| 0:00 – 0:35 | **Introduction** (glissando up) |
| **I** | |
| 0:35 – 0:49 | Main Melody |
| 0:49 – 1:05 | **Bridge** (glissando up) |
| **II** | |
| 1:05 – 1:21 | Main Melody |
| 1:21 – 1:35 | Main Melody (glissando up) |
| **Bridge** | |
| 1:31 – 1:51 | Bridge 1 |
| *1:51 – 2:05* | *Bridge 2* |
| 2:05 – 2:20 | Bridge 3 (glissando up) |
| **III** | |
| 2:20 – 2:35 | Main Melody |
| 2:30 – 2:50 | Main Melody (glissando up) |

## 8. The Principle of Creating a More Generic Musical Surface

I would like to summarize all the example of the recurring principle to create a generic musical surface.

a. The cadence note of the main motif
b. The placement of the two sixteenth notes at the beginning of the main motif
c. The length of the main motif
d. The omission of raised 7th scale degree
e. The simple bass line

The frequency of occurrences of representatives of this principle creates a very high level of consistency.

## 9. Summary and Conclusion

The following musical aspects are identical in both *ABU* and *How We Party:*

1. Tempo
2. Key
3. Register of the main melody
4. Form of the main melody
5. The frequent use of the *glissando*

The following musical aspects are almost identical in both *ABU* and *How We Party:*

1. The pitch content of the main motif
2. The rhythmic content of the main motif

The following musical aspects are different in both *ABU* and *How We Party:*
1. The meter
2. The number of motifs in the main melody

The identical musical aspects are the largest in number.

The almost identical aspects are extremely closely related, their relationship can be demonstrated with only one evolutionary stage.

The different musical aspects are all based on the same principle: the principle to create a more generic musical surface.

Therefore, I conclude that *How We Party* uses original musical material from *ABU*. The creators of *How We Party* transformed the original melody of *ABU* in a way that presents the same material in a more generic and therefore accessible and immediate way. At the same time, *How We Party* presents the material with a much more sophisticated surface.

1. The general texture includes many more layers and more diverse material (for example speaking), whereas *ABU*'s texture is fairly simple.

2. The ascending glissando gesture is much more complex, whereas *ABU* presents the *glissando* as either a pitch or a white noise *glissando.*

3. The intensity level is higher.

I see *How We Party*'s relationship to *ABU* as one of a remix. It uses the same main material, and presents it in a different (more sophisticated and accessible) way. *How We Party* also includes a "footprint" of original material, the bridge section lasting from 1:51 to 2:05. This material is basically unrelated to the main melody. It also occurs only once, and therefore has the nature of an interpolation.