THE DOMAIN NAME LAW FIRM

# ESQwire.com

ESQwire.com PC
Ari Goldberger, Esquire
1908 Route 70 East
Cherry Hill, NJ 08003
856-874-9651

December 4, 2017

To:     Judge Robert B. Kugler,  U.S.J., D.C. N.J.
        United States District Court
        Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets,  Room 1050
        Camden, NJ 08101

RE:     **GOLDBERGER v. VINAI, et al. 1:17-cv-05583-RBK-AMD**

Your Honor:

Please accept this letter brief in lieu of a formal application to show good cause why this action should not be dismissed in response to this Court's Notice of Call for dismissal, pursuant to Fed. R. Civ. P. 4(m), to be heard on 12/18/2017.

This above captioned matter involves service of process on defendants who all are foreign citizens, and plaintiff is processing service pursuant the Hague Convention on the Service Abroad of Judicial and Extrajudicial Document ("The Hague Convention") in compliance with Fed. R. Civ. P. 4(f).

Fed. R. Civ. P. 4(m) does not apply to Rule 4(f) service under the Hague Convention. Rule 4(m) reads:

> **(m) Time Limit for Service.** If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. **This subdivision (m) does not apply to service in a foreign country under Rule 4(f),**

Page 2 -   Letter Reply Brief Rule 4(m) Notice
December 4, 2017

In October, 2017 Plaintiff contacted ABC Legal Services, Inc. of Seattle Washington ("ABC") to handle the service of process. Under the Hague Convention, all served documents must be translated into the language of the defendants' countries of residence which, in this case, are Italy and the Netherlands. The translations of the summons, complaint, and exhibits in Italian and Dutch have been completed by ABC which is now in the process of effectuating service. (True and Correct copies of the translated summons and complaint are attached hereto).

Plaintiff respectfully requests additional time to complete service.  Plaintiff submits that this request has been made in good faith without intention to delay or otherwise prejudice these proceedings.

Respectfully submitted,


**ESQwire.com, P.C.**

By:

Ari Goldberger


cc:     William T. Walsh, Clerk
        Max Goldberger, Plaintiff

Page 3 -   Letter Reply Brief Rule 4(m) Notice
December 4, 2017

### PROOF OF SERVICE

I hereby certify that this Court's Notice of Call for Dismissal Pursuant to Fed.R.Civ.P 4(m) and Plaintiff's foregoing Letter Reply have been served upon Plaintiff, Max Goldberger on this date by first class mail addressed to:

Max Goldberger
35 Cameo Drive,
Cherry Hill, NJ 08003

Ari Goldberger, Esquire
Ari Goldberger Esqwire.com PC
1908 Marlton Pike East
Cherry Hill, NJ  08003

**Tribunale distrettuale degli Stati Uniti**

**Distretto del New Jersey [LIVE] (Camden)**

**Dossier civile per causa n.: 1:17-cv-05583-RBK-AMD**

**Solo per Uso Interno**

GOLDBERGER contro VINAI et al.                    Data inoltro: 31/07/2017

Assegnato a: Giudice Robert B. Kugler              Richiesta della giuria: Querelante

Facente capo a: Giudice magistrato Ann Marie Donio   Natura dell'azione legale: 820 Copyright

Causa: 17:101 Violazione dei diritti d'autore         Giurisdizione: Materia federale

Querelante:

**MAX GOLDBERGER**              rappresentato da **ARI GOLDBERGER**

                                   ESQwire.com P.C.

                                   1908 Route 70 East

                                   CHERRY HILL, NJ 08003

                                   (856) 874-9651

                                   *AVVOCATO PRINCIPALE*

                                   *AVVOCATO DA NOTIFICARE*

Contro

**Convenuto**

**ALESSANDRO VINAI**

**Convenuto**

**ANDREA VINAI**

**Convenuto**

**EELKO VAN KOOTEN**

**Convenuto**

**FADIL EL GHOUL**

**Convenuto**

**R.L.T. SMET**

**Convenuto**

**Non Identificati 1-20**

| Data inoltro | # | Testo dossier |
|---|---|---|

| 31/07/2017 | 1 | QUERELA contro DOES 1/20, FADIL EL GHOUL, R.L.T. SMET, EELKO VAN KOOTEN, ALESSANDRO VINAI, ANDREA VINAI (Oneri amministrativi e di archiviazione $ 400 ricevuta numero CAM8932) con RICHIESTA DELLA GIURIA, presentata da MAX GOLDBERGER.(jbk,) (Inoltrata: 31/07/2017) |
|---|---|---|
| 31/07/2017 | 2 | CITAZIONE NOTIFICATA a FADIL EL GHOUL, R.L.T. SMET, EELKO VAN KOOTEN, ALESSANDRO VINAI, ANDREA VINAI con richiesta di comparire entro 21 giorni. (jbk,) (Inoltrata: 31/07/2017) |
| 31/07/2017 | 3 | AO121 Documento di Copyright presentato. (jbk,) (Inoltrata: 31/07/2017) |
| 31/07/2017 | | MESSAGGIO PER CONTROLLO QUALITA' DELL'UFFICIO DEL CANCELLIERE – A partire dal 1 maggio 2016, le richieste civili iniziali come i reclami e le notifiche di rimozione devono essere presentate elettronicamente. Il pagamento degli oneri amministrativi è effettuato attraverso Internet (pay.gov). Per ulteriori informazioni, consigliamo di visitare il nostro sito: www.njd.uscourts.gov. In futuro, per accelerare la gestione delle richieste iniziali, il legale dovrà inoltrare reclami e notifiche di rimozione elettronicamente. (jbk,) (Inoltrata: 31/07/2017) |

AO 440 (Rev. 12/09) Convocazione in una causa civile

# TRIBUNALE DISTRETTUALE DEGLI STATI UNITI

Per il

_____Distretto del New Jersey_____

| | |
|---|---|
| **MAX GOLDBERGER** | |
| _Querelante_ | **Causa civile 1:17-cv-05583-RBK-AMD** |
| **ALESSANDRO VINAI, et al** | |
| _Convenuti_ | |

## CONVOCAZIONE IN UNA CAUSA CIVILE

A: *(Nome e indirizzo Convenuto)*

**ALESSANDRO VINAI**

Una causa legale è stata inoltrata contro di lei.

Entro 21 giorni dalla notifica di questa convocazione presso di lei (senza contare il giorno di ricezione) – o 60 giorni se lei è un rappresentante del Governo degli Stati Uniti o di un'agenzia degli Stati Uniti, o un impiegato o ufficiale degli Stati Uniti come descritto nel Cod. Fed. Proc. Civile 12 8°) (2) o (3) – deve notificare al querelante una risposta al reclamo allegato o una mozione come da Regolamento n. 12 del Codice Federale di Procedura Civile. La risposta o la mozione deve essere presentata al Querelante o all'avvocato del Querelante, i cui nome e indirizzo sono:

**ARI GOLDBERGER**

ESQwire.com P.C.

1908 Route 70 East

CHERRY HILL, NJ 08003

In caso di mancata risposta, il giudizio sarà automaticamente emesso contro di lei a sostegno del reclamo presentato. Lei deve altresì presentare risposta o mozione con il tribunale.

**WILLIAM T. WALSH**

*Cancelliere del Tribunale*

Data: 31/7/17

AO 440 (Rev. 12/09) Convocazione in una causa civile

Causa civile n.

## RELATA DI NOTIFICA

***(Questa sezione non deve essere presentata al tribunale se non richiesto da Cod. Fed. Proc. Civile 4 (l))***

Questa convocazione per (*nome persona e titolo, ove presente*) _____
è stata ricevuta dal sottoscritto in (data) _____

- Ho personalmente presentato la convocazione all'interessato presso (*luogo*) _____ in (*data*) _____ ; o
- Ho lasciato la convocazione alla residenza dell'interessato o al domicilio a (nome) _____ , individuo di età e discrezione adeguate, che ivi risiede, in (*data*) _____ , e inviato una copia all'ultimo indirizzo noto dell'interessato; o
- Ho presentato la convocazione a (*nome della persona*) _____ , che è designato per legge di accettare la notifica del processo per conto di (*nome dell'organizzazione*) _____ in (*data*) _____ ; o
- Non sono riuscito a presentare la convocazione perché _____ ; o
- Altro (*specificare*)

Ho sostenuto spese per $ _____ per viaggio e $ _____ per notifica, per un totale di $ _____

Dichiaro, pena accusa di falsa testimonianza che queste informazioni sono vere.

Data: _____

_____
*Firma del notificatore*

_____
*Nome e titolo stampato*

_____
*Indirizzo del notificatore*

Informazioni aggiuntive riguardanti tentate notifiche, ecc.:

AO 440 (Rev. 12/09) Convocazione in una causa civile

# TRIBUNALE DISTRETTUALE DEGLI STATI UNITI

Per il

_____Distretto del New Jersey_____

| | |
|---|---|
| **MAX GOLDBERGER** | |
| *Querelante* | **Causa civile 1:17-cv-05583-RBK-AMD** |
| **ALESSANDRO VINAI, et al** | |
| *Convenuti* | |

## CONVOCAZIONE IN UNA CAUSA CIVILE

A: *(Nome e indirizzo Convenuto)*

**ANDREA VINAI**

Una causa legale è stata inoltrata contro di lei.

Entro 21 giorni dalla notifica di questa convocazione presso di lei (senza contare il giorno di ricezione) – o 60 giorni se lei è un rappresentante del Governo degli Stati Uniti o di un'agenzia degli Stati Uniti, o un impiegato o ufficiale degli Stati Uniti come descritto nel Cod. Fed. Proc. Civile 12 8°) (2) o (3) – deve notificare al querelante una risposta al reclamo allegato o una mozione come da Regolamento n. 12 del Codice Federale di Procedura Civile. La risposta o la mozione deve essere presentata al Querelante o all'avvocato del Querelante, i cui nome e indirizzo sono:

**ARI GOLDBERGER**

ESQwire.com P.C.

1908 Route 70 East

CHERRY HILL, NJ 08003

In caso di mancata risposta, il giudizio sarà automaticamente emesso contro di lei a sostegno del reclamo presentato. Lei deve altresì presentare risposta o mozione con il tribunale.

**WILLIAM T. WALSH**

*Cancelliere del Tribunale*

Data: 31/7/17

AO 440 (Rev. 12/09) Convocazione in una causa civile

Causa civile n.

## RELATA DI NOTIFICA

*(Questa sezione non deve essere presentata al tribunale se non richiesto da Cod. Fed. Proc. Civile 4 (l))*

Questa convocazione per (*nome persona e titolo, ove presente*) _____
è stata ricevuta dal sottoscritto in (data) _____

- Ho personalmente presentato la convocazione all'interessato presso (*luogo*) _____ in (*data*) _____ ; o
- Ho lasciato la convocazione alla residenza dell'interessato o al domicilio a (nome) _____, individuo di età e discrezione adeguate, che ivi risiede, in (*data*) _____, e inviato una copia all'ultimo indirizzo noto dell'interessato; o
- Ho presentato la convocazione a (*nome della persona*) _____, che è designato per legge di accettare la notifica del processo per conto di (*nome dell'organizzazione*) _____ in (*data*) _____ ; o
- Non sono riuscito a presentare la convocazione perché _____; o
- Altro (*specificare*)

Ho sostenuto spese per $ _____ per viaggio e $ _____ per notifica, per un totale di $ _____

Dichiaro, pena accusa di falsa testimonianza che queste informazioni sono vere.

Data: _____

_____
*Firma del notificatore*

_____
*Nome e titolo stampato*

_____
*Indirizzo del notificatore*

Informazioni aggiuntive riguardanti tentate notifiche, ecc.:

AO 440 (Rev. 12/09) Convocazione in una causa civile

# TRIBUNALE DISTRETTUALE DEGLI STATI UNITI

Per il

_____Distretto del New Jersey_____

**MAX GOLDBERGER**

*Querelante*

**Causa civile 1:17-cv-05583-RBK-AMD**

**ALESSANDRO VINAI, et al**

*Convenuti*

## CONVOCAZIONE IN UNA CAUSA CIVILE

A: *(Nome e indirizzo Convenuto)*

**EELKO VAN KOOTEN**

Una causa legale è stata inoltrata contro di lei.

Entro 21 giorni dalla notifica di questa convocazione presso di lei (senza contare il giorno di ricezione) – o 60 giorni se lei è un rappresentante del Governo degli Stati Uniti o di un'agenzia degli Stati Uniti, o un impiegato o ufficiale degli Stati Uniti come descritto nel Cod. Fed. Proc. Civile 12 8°) (2) o (3) – deve notificare al querelante una risposta al reclamo allegato o una mozione come da Regolamento n. 12 del Codice Federale di Procedura Civile. La risposta o la mozione deve essere presentata al Querelante o all'avvocato del Querelante, i cui nome e indirizzo sono:

**ARI GOLDBERGER**

ESQwire.com P.C.

1908 Route 70 East

CHERRY HILL, NJ 08003

In caso di mancata risposta, il giudizio sarà automaticamente emesso contro di lei a sostegno del reclamo presentato. Lei deve altresì presentare risposta o mozione con il tribunale.

**WILLIAM T. WALSH**

*Cancelliere del Tribunale*

Data: 31/7/17

AO 440 (Rev. 12/09) Convocazione in una causa civile

Causa civile n.

## RELATA DI NOTIFICA

***(Questa sezione non deve essere presentata al tribunale se non richiesto da Cod. Fed. Proc. Civile 4 (l))***

Questa convocazione per (*nome persona e titolo, ove presente*) ___ ___ _____
è stata ricevuta dal sottoscritto in (data) _____

- Ho personalmente presentato la convocazione all'interessato presso (*luogo*) _____ in (*data*) _____ ; o
- Ho lasciato la convocazione alla residenza dell'interessato o al domicilio a (nome) _____, individuo di età e discrezione adeguate, che ivi risiede, in (*data*) _____, e inviato una copia all'ultimo indirizzo noto dell'interessato; o
- Ho presentato la convocazione a (*nome della persona*) _____, che è designato per legge di accettare la notifica del processo per conto di (*nome dell'organizzazione*) _____ in (*data*) _____ ; o
- Non sono riuscito a presentare la convocazione perché _____; o
- Altro (*specificare*)

Ho sostenuto spese per $ _____ per viaggio e $ _____ per notifica, per un totale di $ _____

Dichiaro, pena accusa di falsa testimonianza che queste informazioni sono vere.

Data: _____                    _____
                                           *Firma del notificatore*

                                       _____
                                           *Nome e titolo stampato*

                                       _____
                                           *Indirizzo del notificatore*

Informazioni aggiuntive riguardanti tentate notifiche, ecc.:

AO 440 (Rev. 12/09) Convocazione in una causa civile

# TRIBUNALE DISTRETTUALE DEGLI STATI UNITI

Per il

_____Distretto del New Jersey_____

| | |
|---|---|
| **MAX GOLDBERGER** | |
| *Querelante* | **Causa civile 1:17-cv-05583-RBK-AMD** |
| **ALESSANDRO VINAI, et al** | |
| *Convenuti* | |

## CONVOCAZIONE IN UNA CAUSA CIVILE

A: *(Nome e indirizzo Convenuto)*

**FADIL EL GHOUL**

Una causa legale è stata inoltrata contro di lei.

Entro 21 giorni dalla notifica di questa convocazione presso di lei (senza contare il giorno di ricezione) – o 60 giorni se lei è un rappresentante del Governo degli Stati Uniti o di un'agenzia degli Stati Uniti, o un impiegato o ufficiale degli Stati Uniti come descritto nel Cod. Fed. Proc. Civile 12 8°) (2) o (3) – deve notificare al querelante una risposta al reclamo allegato o una mozione come da Regolamento n. 12 del Codice Federale di Procedura Civile. La risposta o la mozione deve essere presentata al Querelante o all'avvocato del Querelante, i cui nome e indirizzo sono:

**ARI GOLDBERGER**

ESQwire.com P.C.

1908 Route 70 East

CHERRY HILL, NJ 08003

In caso di mancata risposta, il giudizio sarà automaticamente emesso contro di lei a sostegno del reclamo presentato. Lei deve altresì presentare risposta o mozione con il tribunale.

**WILLIAM T. WALSH**

*Cancelliere del Tribunale*

Data: 31/7/17

AO 440 (Rev. 12/09) Convocazione in una causa civile

Causa civile n.

## RELATA DI NOTIFICA

*(Questa sezione non deve essere presentata al tribunale se non richiesto da Cod. Fed. Proc. Civile 4 (l))*

Questa convocazione per (*nome persona e titolo, ove presente*) _____
è stata ricevuta dal sottoscritto in (data) _____

- Ho personalmente presentato la convocazione all'interessato presso (*luogo*) _____ in (*data*) _____ ; o
- Ho lasciato la convocazione alla residenza dell'interessato o al domicilio a (nome) _____, individuo di età e discrezione adeguate, che ivi risiede, in (*data*) _____, e inviato una copia all'ultimo indirizzo noto dell'interessato; o
- Ho presentato la convocazione a (*nome della persona*) _____, che è designato per legge di accettare la notifica del processo per conto di (*nome dell'organizzazione*) _____ in (*data*) _____ ; o
- Non sono riuscito a presentare la convocazione perché _____ ; o
- Altro (*specificare*)


Ho sostenuto spese per $ _____ per viaggio e $ _____ per notifica, per un totale di $ _____

Dichiaro, pena accusa di falsa testimonianza che queste informazioni sono vere.


Data: _____                           _____

                                                        *Firma del notificatore*

                                              _____

                                                       *Nome e titolo stampato*


                                              _____

                                                      *Indirizzo del notificatore*


Informazioni aggiuntive riguardanti tentate notifiche, ecc.:

AO 440 (Rev. 12/09) Convocazione in una causa civile

## TRIBUNALE DISTRETTUALE DEGLI STATI UNITI

Per il

_____Distretto del New Jersey_____

**MAX GOLDBERGER**

*Querelante*

**Causa civile 1:17-cv-05583-RBK-AMD**

**ALESSANDRO VINAI, et al**

*Convenuti*

## CONVOCAZIONE IN UNA CAUSA CIVILE

A: *(Nome e indirizzo Convenuto)*

**R. L. T. SMET**

Una causa legale è stata inoltrata contro di lei.

Entro 21 giorni dalla notifica di questa convocazione presso di lei (senza contare il giorno di ricezione) – o 60 giorni se lei è un rappresentante del Governo degli Stati Uniti o di un'agenzia degli Stati Uniti, o un impiegato o ufficiale degli Stati Uniti come descritto nel Cod. Fed. Proc. Civile 12 8°) (2) o (3) – deve notificare al querelante una risposta al reclamo allegato o una mozione come da Regolamento n. 12 del Codice Federale di Procedura Civile. La risposta o la mozione deve essere presentata al Querelante o all'avvocato del Querelante, i cui nome e indirizzo sono:

**ARI GOLDBERGER**

ESQwire.com P.C.

1908 Route 70 East

CHERRY HILL, NJ 08003

In caso di mancata risposta, il giudizio sarà automaticamente emesso contro di lei a sostegno del reclamo presentato. Lei deve altresì presentare risposta o mozione con il tribunale.

**WILLIAM T. WALSH**

*Cancelliere del Tribunale*

Data: 31/7/17

AO 440 (Rev. 12/09) Convocazione in una causa civile

Causa civile n.

# RELATA DI NOTIFICA

**(*Questa sezione non deve essere presentata al tribunale se non richiesto da Cod. Fed. Proc. Civile 4 (l)*)**

Questa convocazione per (*nome persona e titolo, ove presente*) _____
è stata ricevuta dal sottoscritto in (data) _____

- Ho personalmente presentato la convocazione all'interessato presso (*luogo*) _____ in (*data*) _____ ; o
- Ho lasciato la convocazione alla residenza dell'interessato o al domicilio a (nome) _____, individuo di età e discrezione adeguate, che ivi risiede, in (*data*) _____, e inviato una copia all'ultimo indirizzo noto dell'interessato; o
- Ho presentato la convocazione a (*nome della persona*) _____, che è designato per legge di accettare la notifica del processo per conto di (*nome dell'organizzazione*) _____ in (*data*) _____ ; o
- Non sono riuscito a presentare la convocazione perché _____ ; o
- Altro (*specificare*)

Ho sostenuto spese per $ _____ per viaggio e $ _____ per notifica, per un totale di $ _____

Dichiaro, pena accusa di falsa testimonianza che queste informazioni sono vere.

Data: _____

_____
*Firma del notificatore*

_____
*Nome e titolo stampato*

_____
*Indirizzo del notificatore*

Informazioni aggiuntive riguardanti tentate notifiche, ecc.:

JS 44   (Rev. 06/17)

# FOGLIO DI COPERTURA CIVILE

Il foglio di copertura civile JS 44 e le informazioni ivi contenute non sostituiscono ne incrementano l'archiviazione o il servizio degli atti processuali o altri documenti richiesti dalla legge, ad eccezione di quanto previsto dalle leggi della corte locale. Questo documento, approvato dalla Conferenza Giudiziale degli Stati Uniti nel settembre 1974, è richiesto dal cancelliere del tribunale al solo scopo di iniziare il registro delle cause pendenti *(VEDERE LE ISTRUZIONI ALLA PAGINA SEGUENTE DI QUESTO DOCUMENTO)*

## I. (a) QUERELANTI
Max Goldberger

**(b)** Contea di residenza del primo Querelante dell'elenco   Camden
*(AD ECCEZIONE DI CASI DI QUERELANTI NEGLI USA)*

**(c)** Avvocati *(nome dello studio, indirizzo, numero di telefono)*
Ari Goldberger, Esq.
ESQwire.com, P.C.
1908 Route 70 East, Cherry Hill, NJ 08003 (856) 871-9651

## CONVENUTI
Alessandro Vinai, Andrea Vinai, Eelko Van Kooten, Fadil El Ghoul,
R.I.T. Smet et. al.

Contea di residenza del primo Convenuto dell'elenco
*(SOLO IN CASO DI QUERELANTI NEGLI USA)*

NOTA: NEI CASI DI CONDANNA NEL TERRITORIO, USARE IL LUOGO
STABILITO DAL TRATTATO DEL PAESE CONVOLTO

Avvocati *(Se a conoscenza)*

## II. BASI DI GIURISDIZIONE *(Mettere "X" in una sola casella)*

☐ 1  Querelante del Governo USA
*(Il governo USA non è parte)*

☐ 2  Convenuto del Governo USA   ☒ 4  Altro
*(Indicare la cittadinanza delle parti nel punto III)*

☐ 3  Questione federale
*(Il governo USA non è parte)*

## III. CITTADINANZA DELLE PARTI PRINCIPALI *(Mettere "X" in una sola casella per il querelante (Solo in casi di diversità) e "X" in una sola casella per il convenuto)*

| | QUER. CONV. | | | QUER. CONV. |
|---|---|---|---|---|
| Cittadino di questo stato | ☒ 1 | Inserito o  al centro di attività principale di questo stato | 4 | 4 |
| Cittadino di un altro stato | ☐ 2 | Inserito e al centro di attività principale in un altro stato | 5 | 5 |
| Cittadino o soggetto di un paese straniero | 3   ☒ 3 | Nazione straniera | 6 | 6 |

## IV.  NATURA DELLA DOMANDA *(Mettere "X" in una sola casella)*
Cliccare qui per:  Codice descrizione natura della domanda.

| CONTRATTO | ILLECITI CIVILI | | CONFISCA/PENA | FALLIMENTO | ALTRI STATUTI |
|---|---|---|---|---|---|
| ☐ 110 Assicurazione | LESIONI PERSONALI | LESIONI PERSONALI | ☐ 625 Confisca relativa a droga così da 21 USC 881 | 422 Ricorso 28 USC 158 | ☐ 375 Atto falsa dichiarazione |
| ☐ 120 Marina | 310 Aereo | ☐ 365 Lesioni personali - Responsabilità dei prodotti | ☐ 690 Altro | 423 Ritiro 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Atto Miller | 315 Responsabilità dei prodotti aerei | | | | |
| ☐ 140 Strumenti negoziabili | 320 Aggressione, diffamazione & calunnia | ☐ 367 Assistenza sanitaria/ Responsabilità dei prodotti delle lesioni personali e farmaceutiche | | **DIRITTI DI PROPRIETA'** | ☐ 400 Riassegnazione di stato |
| ☐ 150 Rimborso eccedenze & esecuzione delle decisioni | | | | ☒ 820 Copyright | ☐ 410 Antitrust |
| ☐ 151 Atto assistenza sanitaria | 330 Enti previdenziali di categoria | | | ☐ 830 Brevetto | ☐ 430 Banche e associazioni bancarie |
| ☐ 152 Recupero prestito studentesco predefinito (veterani esclusi) | 340 Marina | ☐ 368 Responsabilità dei prodotti da lesioni personali da amianto | | ☐ 835 Brevetto – abbreviazione nuova sostanza(ANDA) | ☐ 450 Commercio |
| | 345 Responsabilità dei prodotti marini | | | ☐ 840 Marchio registrato | ☐ 460 Espulsione |
| ☐ 153 Recupero eccesso indennità di pagamento veterani | 350 Veicoli a motore | **PROPRIETA' PRIVATA** | | **PREVIDENZA SOCIALE** | ☐ 470 Racket e corruzione |
| ☐ 160 Domanda azionisti | 355 Responsabilità dei prodotti dei veicoli a motore | ☐ 370 Altra frode | **LAVORO** | 861 HIA (1395ff) | ☐ 480 Credito al consumo |
| ☐ 190 Altri contratti | 360 Altre lesioni personali | ☐ 371 Affidabilità del prestito | ☐ 710 Atto standard lavoro equo | 862 Silicosi (923) | ☐ 490 TV satellitare |
| ☐ 195 Contratto responsabilità dei prodotti | 362 Lesioni personali - Negligenza medica | ☐ 380 Altri danni ai beni personali | ☐ 720 Rapporto dipendente/dirigente | 863 DIWC/DIWW (405(g)) | ☐ 850 Titoli/Materie prime/Scambio |
| ☐ 196 Franchise | | ☐ 385 Responsabilità dei prodotti di beni personali | ☐ 740 Atto lavoro ferroviario | 864 SSID Titolo XVI | ☐ 890 Altre azioni di statutarie |
| | | | ☐ 751 Atto famiglia e congedo medico | 865 RSI (405(g)) | ☐ 891 Norme agricole |
| **PROPRIETA' REALE** | **DIRITTI CIVILI** | **PETIZIONI DI PRIGIONIERI** | ☐ 790 Altre controversie dei lavoratori | **TASSE FEDERALI** | ☐ 892 Materia ambientale |
| ☐ 210 Condanna di terra | ☐ 440 Altri diritti civili | **Habeas Corpus:** | ☐ 791 Atto protezione del reddito pensionistico del lavoratore | ☐ 870 Tasse (Querelante o convenuto USA) | ☐ 893 Legge sulla libertà d'informazione |
| ☐ 220 Pignoramento | ☐ 441 Voto | ☐ 463 Detenuto straniero | | ☐ 871 IRS—Terza parte 26 USC 7609 | ☐ 896 Arbitrato |
| ☐ 230 Locazione & emanazione | ☐ 442 Impiego | ☐ 510 Mozione di sgombero | | | ☐ 899 Legge sul provvedimento amministrativo/Ricorso contro la decisione dell'agenzia |
| ☐ 240 Illeciti di terra | ☐ 443 Alloggio/ Sistemazione | **Altro:** | **IMMIGRAZIONE** | | ☐ 950 Costituzionalità degli statuti |
| ☐ 245 Responsabilità dei prodotti degli illeciti | ☐ 445 Americani con disabilità - impiego | ☐ 530 Generale | ☐ 462 Applicazione di naturalizzazione | | |
| ☐ 290 Tutte le altre reali proprietà | ☐ 446 Americani con disabilità - altro | ☐ 535 Pena di morte | ☐ 465 Altre politiche di immigrazione | | |
| | ☐ 448 Educazione | ☐ 540 Mandamus & altri | | | |
| | | ☐ 550 Diritti civili | | | |
| | | ☐ 555 Condizioni di detenzione | | | |
| | | ☐ 560 Detenuti civili - Condizioni di detenzione in isolamento | | | |

## V.  ORIGINE *(Mettere "X" in una sola casella)*

| ☒ 1 Procedimento iniziale | ☐ 2 Rimosso dal tribunale | ☐ 3 Rimandato dalla Corte di appello | ☐ 4 Reintegrato o riaperto | ☐ 5 Trasferito di un altro distretto *(specificare)* | ☐ 6 Contenzioso multidistrettuale - trasferimento | ☐ 8 Contenzioso multidistrettuale – scheda diretta |
|---|---|---|---|---|---|---|

## VI.  CAUSA DELL'AZIONE
Citare lo Statuto Civile (USA) secondo il quale si sta compilando *(Non citare statuti giurisdizionali a meno che diversi)*:
17 U.S.C.  § 101 et seq.

Breve descrizione della causa:
Violazioni del diritto d'autore

## VII.  RICHIESTA NELLA QUERELA:
☐ METTERE X SE SI TRATTA DI CAUSA COLLETTIVA SECONDO LA LEGGE23, F.R.Cv.P.

**RICHIESTA €**

BARRA SI solo se richiesto nella Querela:
**RICHIESTA DI GIURIA:**   ☒ Si   ☐ No

## VIII. CASI RELATIVI SE PRESENTI
*(Vedi istruzioni)*

GIUDICE    ⌠Firma illegibile⌡    NUMERO REGISTRO _____

DATA  31/07/2017                     FIRMA DELL'AVVOCATO DESIGNATO

### SOLO PER USO DELL'UFFICIO

| RICEVUTA N | IMPORTO | APPLICAZIONE IFP | GIUDICE | GIUDICE MAGISTRATO |
|---|---|---|---|---|

SECONDO LA LEGGE 23. L. Fed. Proc. Civile                          LA GIURIA CHIEDE:

**NELLA CORTE DISTRETTUALE DEGLI STATI UNITI D'AMERICA**
**PER IL DISTRETTO DEL NEW JERSEY**
**Camden**

| | | |
|---|---|---|
| Max Goldberger, | ) | |
| | ) | |
| Querelante, | ) | |
| | ) | |
| Contro | ) | Azione civile n. ___ ___ ___ ___ |
| | ) | |
| Alessandro Vinai, Andrea Vinai, | ) | |
| Eelko van Kooten, Fadil El Ghoul, | ) | |
| R.L.T. Smet e Non Identificati 1-20, | ) | |
| | ) | |
| Convenuti. | | |

## QUERELA VERIFICATA CON
## RICHIESTA DELLA GIURIA

Il Querelante Max Goldberger, per mezzo del sottoscritto avvocato, con la presente dichiara la seguente contro i Convenuti Alessandro Vinai, Andrea Vinai, Eelko van Kooten and R.L.T. Smet (collettivamente "i Convenuti").

## DICHIARAZIONE PRELIMINARE

1. Questo è un caso di violazione del copyright della composizione musicale del Querelante in violazione dell'atto sul copyright del 1976 (come emendato), 17 U.S.C. 101 et seq. (" Atto del Copyright") e la legge comune del New Jersey. Questa azione nasce a causa dell'uso non autorizzato e della falsa attribuzione da parte dei Convenuti della composizione musicale in originale del Querelante "Abu" ("Abu" o "Opera coperta da Copyright").

2. Il Querelante è un artista, un compositore e un cantautore, che ha dato inizio a questa causa per invocare la protezione che gli viene offerta per ciò che riguarda un'opera originale coperta dall'Atto del Copyright, per difendere la sua posizione come compositore e creatore di musica elettronica e per difendersi dalla deliberata violazione da parte dei Convenuti di un'Opera coperta da Copyright, la cui violazione ha danneggiato il Querelante negandogli il sostentamento.

3. Il Querelante inoltre, chiede i danni economici, così come stabilito dalla Legge Federale sul Copyright.

## GIURISDIZIONE E SEDE

4. Questa Corte ha giurisdizione sull'argomento di questa azione ai sensi del 28 U.S.C. 1338(a) e 1331, in questo l'azione sorge sotto la legge degli Stati Uniti e più in particolare sotto l'Atto del Copyright. Questa Querela afferma la violazione del copyright, la violazione del copyright contributivo e la violazione del copyright vicario come stabilito dall'Atto del Copyright e dalla legge comune di stato. Questa Corte ha competenza giuridica sulla questione federale come stabilito nel 28 U.S.C. 1331 e 1338(a) & (b), e giurisdizione ancillare come stabilito dalla legge comune. "Le corti distrettuali devono avere giurisdizione originale di tutte le azioni civili che sorgono ai sensi dell'Atto dei Congressi relativo al copyright e ai marchi registrati. Tale giurisdizione è esclusiva delle corti degli stati.. in caso di copyright". 28 U.S.C. 1338(a).

5. La sede è appropriata in questo Distretto giudiziario ai sensi del 28 U.S.C. 1931, poiché i Convenuti sono soggetti a giurisdizione personale in questo Distretto in virtù delle loro transazioni, azioni e solleciti commerciali in questo Distretto e perché sono parte sostanziale degli eventi rilevanti avvenuti in questo Distretto. Inoltre, il Querelante risiede in questo Distretto e ci ha risieduto durante tutto il tempo inerente a questa azione legale. La sede in questo Distretto giudiziario è anche appropriata perché i Convenuti si sono esibiti, hanno suonato e distribuito e continuano ad esibirsi, a suonare e a distribuire musica illecita, oggetto principale di questa azione in questo Distretto, e il Querelante ha ricevuto e continua a ricevere un danno irreparabile in questo Distretto.

## PARTI

6. Il Querelante Max Goldberger ("Querelante") è una persona fisica, che è, ed è sempre stato, residente a Cherry Hill nel New Jersey e ha risieduto nella Contea di Camden nel New Jersey. Il Querelante è un artista, compositore e cantautore. Come spiegato dettagliatamente sotto, nel 2014 il Querelante compose, creò e registrò la composizione musicale elettronica Abu.

7. Il Querelante è a conoscenza e crede, e su queste basi afferma, che il Convenuto Alessandro Vinai e il Convenuto Andrea Vinai, entrambi individui, siano cittadini italiani e siano fratelli (collettivamente "i Vinai").

8. Il Querelante è a conoscenza e crede, e su queste basi afferma, che i Vinai abbiano formato, prodotto e siano conosciuti come il gruppo musicale elettronico "Vinai". Vinai e Vinai si considerano come i creatori della composizione elettronica musicale "How We Party" che viola il copyright.

9. Il Querelante è a conoscenza e crede, e su queste basi afferma, che il Convenuto Eelko van Kooten ("van Kooten"), sia un individuo nonché il proprietario della Spinnin'Records. Spinnin'Records è un'etichetta discografica olandese e una casa editrice discografica ("Spinnin") che ha scritturato e promosso i Vinai e che amministra lo sfruttamento commerciale, inter alia, della composizione musicale colposa "How We Party".

10. Il Convenuto Fadil El Ghoul è un individuo e il suo nome d'arte è "R3hab" (di seguito, "R3hab o "Rehab"). Rehab è un disk jockey olandese ("DJ") e un produttore discografico con cui i Vinai e il Convenuto R.L.T. Smet hanno collaborato e violato l'Opera coperta da Copyright del Querelante.

11. Il Convenuto R.L.T. Smet ("Smet") è una società olandese il cui indirizzo è Karariesprek 157, Vlissingen, OH, 4386 DJ, Olanda. Secondo le registrazioni del database delle registrazioni dei nomi di dominio WHOIS, è stato Smet a registrare il nome di dominio internet di Rehab, djr3hab.com. Una copia esatta e completa della registrazione per djr3hab.com è allegata a questa Querela come <u>Prova</u> A.

12. I nomi veri e le capacità vere, qualora individuali, aziendali, associate, o altre dei Convenuti qui citati come Non Identificati da 1 fino al 20, sono sconosciute al Querelante che di conseguenza cita i suddetti Convenuti con questi nomi fittizi (i "Convenuti Non Identificati"). Se necessario, il Querelante chiederà permesso alla Corte per rettificare questa Querela per affermare i nomi veri e le capacità vere dei Convenuti Non Identificati qualora questi venissero riscontrati. Il Querelante è informato e crede, e su queste basi afferma, che i Convenuti Non Identificati siano responsabili per il Querelante, in seguito alla loro partecipazione a tutti o ad alcuni atti ed omissioni qui previste; perciò essi ed ognuno di essi, sono entrati in contatto, operato e/o supervisionato le operazioni, e/o i benefici finanziari derivanti dalle attività di violazione dell'Opera coperta da Copyright del Querelante e i diritti esclusivi qui affermati.

13. Gli atti qui lamentati sono emersi dallo stesso schema o piano comune che viola i diritti del Querelante coperti dall'Atto del Copyright, o la stessa transazione, occorrenza, o serie di transazioni o occorrenze. Ci sono inoltre domande di legge e fatti comuni a tutti i Convenuti.

## ASSERZIONI GENERALI RILEVANTI AD OGNI RICHIESTA
### Il Querelante proprietario di Abu

14. Nel marzo 2014 il Querelante sviluppò la sua idea di comporre ed infatti compose, creò e registrò la composizione musicale elettronica in originale Abu.

15. Inizialmente il Querelante registrò il copyright nella composizione musicale di Abu con l'Ufficio del Copyright degli Stati Uniti il 10 marzo 2015. Una copia esatta e completa della registrazione è allegata a questa Querela come <u>Prova</u> B.

16. Nel 2014 il Querelante caricò la sua registrazione di Abu su internet attraverso SoundCloud, su <u>https://soundcloud.com/djmaxgold/noww</u>. SoundCloud è una piattaforma online di audio distribuzione che permette ai suoi utenti di caricare, registrare, promuovere e condividere le loro creazioni originali. Già il 15 aprile 2015 aveva raggiunto più di 100 download. Ad oggi Abu      ha      raggiunto      i      18.918      ascolti      su      SoundCloud.      (vedi <u>https://soundcloud.com/djmaxgold/noww</u>)

## <u>Accesso diretto dei Convenuti e furto dell'Opera coperta da Copyright</u>

17. Il festival di musica elettronica *Ultra* a Miami in Florida ("*Ultra*") è il festival di musica elettronica preminente negli Stati Uniti. In anticipo all'evento, nel 2014, il Querelante compose diverse canzoni originali. Durante l'*Ultra* del 2014, svoltosi tra il 28 e il 30 marzo, il Querelante parcheggiò un camion dei gelati equipaggiato di alto parlanti, esattamente di fronte l'entrata principale del festival. Le foto del camion dei gelati del Querelante all'*Ultra* 2014 sono allegate a questa Querela come <u>Prova</u> C. Durante il fine settimana di *Ultra* il camion ha sempre trasmesso, attraverso gli alto parlanti a tutto volume, le registrazioni originali del Querelante, Abu inclusa, così che tutti quelli che parteciparono al festival potessero ascoltarla. Inoltre, il Querelante ha distribuito dei biglietti per scaricare canzoni gratis così che le persone potessero scaricare le novità di Max Gold su <u>www.DJMaxGold.com</u>. Tra le canzoni offerte da scaricare gratis c'era la registrazione in originale di Abu del Querelante. Sul camion era esposto un grosso cartello con su scritto: MAX GOLD -kabuki and others OUT NOW! -Free Download –DJMAXGOLD.COM. (MAX GOLD -kabuki ed altri FUORI SUBITO! Download gratis su DJMAXGOLD.COM)

18. I Convenuti hanno partecipato e si sono esibiti all'*Ultra* del 2014. Sulla base di informazioni e convinzioni, essi hanno ascoltato Abu e successivamente i Vinai hanno rubato la composizione originale e incorporato, senza alcun limite, la melodia di Abu nella loro successiva composizione "How We Party". Si crede che i Convenuti abbiano successivamente ascoltato Abu su internet accedendo alla musica tramite DJMAXGOLD:COM. Una copia esatta e completa del rapporto di un esperto che ha confrontato le due opere è allegata a questa Querela come <u>Prova</u> D.

19. Prima che i Convenuti avessero accesso ad Abu all'*Ultra* del 2014, la musica dei Vinai era molto diversa e aveva ricevuto solo qualche milione di ascolti su DJs. Il prematuro rilascio di "Bounce Generation" dei Vinai per esempio, non ha neppure una melodia. Dopo l'*Ultra* del 2014 invece, e dopo aver ascoltato la musica del Querelante, il suono dei Vinai prese un carattere nuovo con "How We Party", somigliando meno al genere dei Convenuti e più a quello del Querelante, più nello specifico, somigliando di più ad Abu. A seguito di questa trasformazione le tracce audio che seguirono l'*Ultra* raggiunsero oltre 17 milioni di ascolti, come spiegato meglio qui sotto.

## Attività di violazione dei Convenuti
### "How We Party"

20. "How We Party", la così chiamata composizione dei Vinai, copia, interpola e presenta fortemente la melodia, in particolare la musica e il ritmo, di Abu e perciò entrambi le composizioni contengono una porzione qualitativamente distinta, importante ed originale di Abu. L'uso di Abu in "How We Party" è immediatamente evidente e costituisce, inter alia, il verificarsi di una violazione e di un derivato lavoro non autorizzato.

21. Dal 1° agosto 2014 circa fino a questi ultimi giorni, i Convenuti hanno fatto sì che la registrazione dei Vinai della composizione contraffatta "How We Party" venisse postata, suonata e promossa su internet anche sui seguenti siti di Spinnin' https://soundcloud.com/spinninrecords/r3hab-vinai-how-we-party-original-mix, https://www.youtube.com/watch?v=TL1ByAH8CK, https://pro.beatport.com/track/how-weparty-original-mix/5641903, https://pro.beatport.com/release/how-we-party/1346376; sui seguenti link di Rehab: https://soundcloud.com/r3hab/r3hab-vinai-how-we-party, https://www.youtube.com/watch?v=2v8n0jv70vk; e dei Vinai al https://soundcloud.com/wearevinai/r3habvinaihowweparty/

22. Il solo post mostra 14 milioni di ascolti e il post di SoundCloud ha 2.66 milioni di ascolti.

23. I Vinai hanno raggiunto il successo e la popolarità dopo l'uscita di "How We Party", dopo che questa venisse inserita nella Top 100 dei DJ di DJ Mag, debuttando nel 2014 e per scalare la classifica fino al numero 43 nel 2015 e al numero 37 nel 2016.

24. Dal 1° di agosto 2014 circa, i Vinai si esibiscono dal vivo, con la loro versione contraffatta di "How We Party", in numerose occasioni e in diverse e famose discoteche, festival musicali ed in altre sedi, come il Festival della Musica Elettronica *Ultra* 2015 a Miami in Florida, a

*Tomorrowland* e *Isle of Dream* in Svizzera l'8 ottobre 2014, al *Vanilla Club* a Jesolo in Italia, a *Savoyon* il 25 settembre 2014 e ad Atlantic City il 7 marzo del 2015.

25. I video di alcune esibizioni dal vivo dei Vinai sono reperibili su youtube.com, comprese quelle ai seguenti indirizzi internet:

https://www.youtube.com/watch?v=4qZjjqwer34,

https://www.youtube.com/watch?v=JiVFcMhs67k,

https://www.youtube.com/watch?v=HTBfARgqWJs,

https://www.youtube.com/watch?v=CJGNr87bTiw.

26. Altre esibizioni dal vivo della versione contraffatta dei Vinai sono postati o descritti nei seguenti indirizzi internet:

a) http://turnupthebass .net/2014/07/29/top-10-tomorrowland-future -anthems/

b) httos://soundcloud.com/rudee-jordacWr3  hab-live-mainstage-tomorrowland-belgium2014-07-20

c) https://soundclo ud.com/tomorrowland2014sets/ww-live-tomprrowland-2014-day-6beigium-27-07-2014 d.https://soundcloud.com/boupas/will-sparks-tomorrowland-2014

d) https://soundcloud.com/edmtv8/sander-van-doorn-identity-246-1ive-tomorrowland-2   Q 1415-08-2014   f.   http://bestlivesets.com/calvin-harris-live-at-lollapalooza-2014-day-2-chicago,.()2 -aug2014/

e) https://soundcloud.com/borgeousmusic/borgeous-live-electric-zoo-2014.

27. Non è la prima volta che i Vinai si appropriano del lavoro di un altro cantautore. Come descritto in un articolo internet pubblicato e supportato su http://www.edmghostproducer.com/dimitri-vegas-likemike-vinai-stole-louder/, i Vinai hanno rubato la melodia per la loro composizione "Louder".

28. I Convenuti sapevano, o avrebbero dovuto sapere, che l'Opera coperta da Copyright non poteva essere usata per un lavoro musicale dei Vinai senza una licenza, come è d'abitudine nell'ambiente, ma questi non hanno mai richiesto una licenza o qualunque altro permesso.

29. Oltre alle esibizioni dal vivo contraffatte e ai post su internet descritti e documentati sopra, gli atti di violazione dei Convenuti comprendono, ma non si limitano a, creazioni illegali, registrazioni, manifattura, produzione, vendita, licenza, marketing e distribuzione della composizione musicale e della registrazione di "How We Party". La violazione da parte dei Convenuti consiste nell'appropriazione illegale di un'Opera coperta da Copyright.

30. "How We Party" è il più grande successo dei Vinai che alla data del 28 luglio 2017, ha venduto milioni di copie e, sulla base di informazioni, è stata scaricata più di tre milioni di volte ed ha ricevuto più di 17 milioni di ascolti da parte di Dj e dagli utenti di internet. I Convenuti ed ognuno di essi, hanno approfittato dell'incremento significativo dei download della canzone, delle prenotazioni nei locali e della pubblicità su YouTube e su SoundCloud; tutto questo è da attribuire all'uso illecito da parte dei Convenuti dell'Opera coperta da Copyright.

31. I Convenuti hanno tratto beneficio dalla canzone "How We Party" in questo Distretto, nello stato della Florida, attraverso gli Stati Uniti e attraverso il mondo, riproducendo, preparando lavori correlati, esibendosi pubblicamente e comunque traendo beneficio da "How We Party": (i) tramite la riproduzione su internet; (ii) postando e autorizzando i download su internet in cambio di un riscontro economico per la pubblicità; (iii) tramite la sincronizzazione con i video; (iv) suonando alla radio; e (v) esibendosi con queste canzoni e con tutto ciò che ne è derivato, nei concerti dal vivo e autorizzandone l'uso a terze parti.

32. La violazione continua visto che "How We Party" continua ad essere registrata, suonata, scaricata e distribuita per gli usi in varie configurazioni fino a questi ultimi giorni.

33. A causa degli atti descritti in precedenza commessi dai Convenuti, il Querelante ha subito e continua a subire danni significativi. Lo sfruttamento non autorizzato da parte dei Convenuti di Abu, della composizione violata dai Vinai e di tutto ciò che ne è derivato è, in deroga dei, e ingiurioso per, i diritti del Querelante come proprietario del copyright per e verso Abu, tutto a danno sostanziale per il Querelante.

34. Il Querelante ha ingaggiato il sottoscritto avvocato ed ha acconsentito a pagare una parcella di cifra ragionevole per tutti i servizi offerti in questa azione.

## ACCUSA 1
### VIOLAZIONE DEL COPYRIGHT NELL'OPERA COPERTA DA COPYRIGHT DEL QUERELANTE

(Il Querelante contro Tutti i Convenuti)

35. Il Querelante asserisce ed incorpora in funzione di tutte le accuse di questa Querela con forza ed effetto come ampiamente illustrato nel documento.

36. Il Querelante è, ed è sempre stato, il proprietario del copyright regolamentato dalla legge sul copyright degli Stati Uniti per quanto riguarda la composizione musicale intitolata "Abu", la quale è in possesso di un Certificato di Registrazione del Copyright valido emesso dal Registro dei Copyright.

37. Tra i diritti esclusivi garantiti al Querelante dall'Atto del Copyright ci sono i diritti esclusivi che gli permettono di riprodurre e di distribuire il materiale coperto da copyright al pubblico e di preparare lavori correlati ad esso.

38. I Convenuti, senza permesso ne consenso da parte del Querelante, hanno riprodotto e distribuito al pubblico l'Opera coperta da Copyright del Querelante. I Convenuti non hanno alcuna licenza, né nessun'altra forma di permesso, per usare, copiare, riprodurre, distribuire o creare lavori correlati ad Abu. Tramite la copia, l'esibizione, la distribuzione, la sincronizzazione e per aver creato lavori correlati, autorizzando e traendo vantaggio da "How We Party", i Convenuti hanno violato i diritti esclusivi del Querelante nella composizione musicale Abu. Le azioni dei Convenuti costituiscono una violazione del copyright del Querelante e i diritti esclusivi coperti da legge sul copyright.

39. Il Querelante è informato e sostiene che gli atti di violazione illustrati in precedenza siano stati deliberati ed intenzionali, con totale spregio ed indifferenza per i diritti del Querelante. I Convenuti hanno sostanzialmente approfittato delle loro attività di violazione, hanno accumulato e continuano ad accumulare provvigioni e diritti dalla vendita dell'opera soggetto di violazione e da tutto ciò che ne deriva, oltre che dalla pubblicità su internet e hanno conservato una porzione di questi guadagni senza versare alcuna somma al Querelante. I Convenuti dovrebbero essere considerati congiuntamente e separatamente responsabili per tutti i profitti derivati dal risultato delle loro attività di violazione in quanto soci concreti.

40. Come conseguenza della violazione intenzionale da parte dei Convenuti del copyright e dei diritti esclusivi coperti da legge sul copyright del Querelante, egli ha diritto a chiedere il danno massimo in base al 17 U.S.C. 504 (c) o di recuperare il suo attuale danno e i profitti attribuibili alla violazione conformemente al 17 U.S.C. 504 (b), a scelta del Querelante e di ogni altro rimedio previsto dalla legge. Il Querelante è inoltre intenzionato a richiedere il rimborso della parcella dei suoi avvocati e di tutti i costi che ne derivano secondo quanto stabilito da 17 U.S.C. 505.

41. Ai sensi del 17 U.S.C. 502 e 503, il Querelante è autorizzato ad effettuare un'azione ingiuntiva che proibisca ai Convenuti di infrangere oltre il copyright del Querelante.

ACCUSA 11

VIOLAZIONE CONTRIBUTIVA DEL COPYRIGHT

(Il Querelante contro Tutti i Convenuti)

42. Il Querelante riasserisce ed incorpora con riferimento a tutte le accuse di questa Querela con la stessa intenzione affermata finora.

43. Il Querelante è informato e sostiene, e sulla base di ciò asserisce, che i Convenuti siano impegnati negli affari di autorizzazione sistematica, di essere complici e/o di contribuire materialmente alla manifattura, riproduzione, adattamento e/o distribuzione all'interno degli Stati Uniti, di registrazioni o di raccolte non autorizzate del lavoro del Querelante.

44. Le azioni sopra citate da parte dei Convenuti, e da ognuno di loro, hanno indotto, causato e materialmente contribuito alla violazione da parte di altri Convenuti del copyright e dei diritti esclusivi di cui il Querelante gode secondo quanto stabilisce la legge sul Copyright per quanto riguarda l'Opera coperta da Copyright.

45. Gli atti relativi ad ogni Convenuto in questa Querela costituiscono violazione contributiva del Copyright e dei diritti esclusivi di cui il Querelante gode secondo quanto stabilisce la legge sul Copyright in violazione della sezione 106 e 501 dell'Atto sul Copyright, 17 U.S.C. 106 e 501.

46. Il Querelante è informato e sostiene, e sulla base di ciò asserisce, che le azioni dei Convenuti siano state deliberate, intenzionali e volontarie, senza nessuna attenzione e con indifferenza per i diritti del Querelante.

47. Come risultato diretto e determinante della violazione contributiva dei Convenuti del copyright del Querelante e dei diritti esclusivi del copyright, il Querelante ha il diritto ai danni in una somma che verrà stabilita al processo che però il Querelante non può determinare o calcolare in questo momento. Se necessario, il Querelante chiederà il permesso per modificare questa Querela per determinare la somma massima per i danni e per i profitti, non appena questa somma verrà accertata.

48. A causa di tutti i fatti illustrati in precedenza, il Querelante ha diritto a ricevere i profitti dei Convenuti derivanti dalla violazione secondo il 17 U.S.C. 504, per ogni singola violazione. In riferimento a ciò, il Querelante ha diritto ad una contabilità relativa a tutti i proventi lordi ricevuti dai Convenuti, direttamente o indirettamente, per tutti gli usi fatti violando la registrazione e l'elaborazione dell'Opera coperta da Copyright del Querelante. La richiesta che viene qui fatta è quella che la Corte ordini ai Convenuti di restituire questa contabilità relativa a questi profitti e un credito costruttivo a vantaggio del Querelante.

49. In alternativa, il Querelante ha diritto ai danni statutari, ai sensi del 17 U.S.C. §504(c), nella cifra di $150, per ogni Convenuto e per ogni violazione dell'Opera coperta da Copyright del Querelante, per la violazione intenzionale dei Convenuti del copyright del Querelante e per i

diritti esclusivi coperti da copyright per l'Opera coperta da Copyright del Querelante o ad altre cifre che potrebbero esse idonee, come stabilito dal 17 U.S.C. 504(c).

50. Il Querelante ha inoltre diritto ad un rimborso per la parcella del suo legale e per tutti i costi sostenuti ai sensi del 17 U.S.C. 505.

51. Come conseguenza diretta ed immediata degli atti e dei comportamenti descritti, il Querelante ha subito e continua a subire ingiurie sostanziali e per questo motivo dichiara, a meno che non venga imposto ed impedito da questa Corte, che i Convenuti continueranno a violare i diritti del Querelante relativi all'Opera coperta da Copyright del Querelante. Il Querelante ha inoltre diritto al rilascio di un'ingiunzione permanente contro i Convenuti, e ognuno di loro, per essere coinvolti in atti indebiti, come asserito in questa Querela.

## ACCUSA 111
### VIOLAZIONE VICARIA DEL COPYRIGHT
(Il Querelante contro i Convenuti Eelko van Kooten, Fadil El Ghoul, R.L.T. Smet e
Non Identificati da 1 a 20 compreso)

52. Il Querelante riassserisce ed incorpora con riferimento a tutte le accuse di questa Querela con la stessa forza ed intenzione così come ribadito finora.

53. Il Querelante è informato e crede, e su queste basi asserisce, come ogni volta qui menzionato, che i Convenuti van Kooten, Ghoul, Smet e Non Identificati da 1 fino a 20 compreso, ed ognuno di loro, erano nella posizione di poter supervisionare e/o controllare la condotta dei Vinai e dei loro impiegati, agenti e di tutte quelle persone che lavorano per i Vinai; e che i Convenuti van Kooten, Ghoul, Smet e Non Identificati da 1 fino a 20 compreso, ed ognuno di loro, abbiano fallito nell'esercitare questa supervisione e/o controllo, e come conseguenza diretta e immediata di questo fallimento, i Convenuti van Kooten, Ghoul, Smet e Non Identificati da 1 fino a 20 compreso, ed ognuno di loro, hanno violato il copyright del Querelante e la licenza dei diritti esclusivi relativi all'opera del Querelante, come asserito in precedenza.

54. Il Querelante è informato e crede, e su queste basi asserisce, come ogni volta qui menzionato, che i Convenuti van Kooten, Ghoul, Smet e Non Identificati da 1 fino a 20 compreso, ed ognuno di loro, abbiano ricevuto benefici diretti e sostanziali dalla violazione dell'Opera coperta da Copyright del Querelante da parte dei Vinai come asserito sopra, e che, tra le altre cose, alcuni dei profitti, se non tutti, che i Vinai ricevettero da questa violazione, furono trasmessi dai Convenuti van Kooten, Ghoul, Smet e Non Identificati da 1 fino a 20 compreso.

55. Il Querelante è informato e crede, e su queste basi asserisce, che i fatti illustrati in precedenza da parte dei Convenuti van Kooten, Ghoul, Smet e Non Identificati da 1 fino a 20 compreso,

ed ognuno di loro, siano stati deliberati, intenzionali e volontari, senza nessuna attenzione e con indifferenza per i diritti del Querelante.

56. Come risultato diretto ed approssimativo della violazione vicaria dei Convenuti van Kooten, Ghoul, Smet e Non Identificati da 1 fino a 20 compreso, del copyright del Querelante e dei diritti esclusivi del copyright, il Querelante ha diritto ai danni in una somma che verrà stabilita al processo che però il Querelante non può determinare o calcolare in questo momento. Se necessario, il Querelante chiederà il permesso per modificare questa Querela per determinare la somma massima per i danni e per i profitti, non appena questa somma verrà accertata.

57. A causa di tutti i fatti illustrati in precedenza, il Querelante ha diritto a chiedere i profitti dei Convenuti derivanti dalla violazione, secondo il 17 U.S.C. 504, per ogni singola violazione. In riferimento a ciò, il Querelante ha diritto ad una contabilità relativa a tutti i proventi lordi ricevuti dai Convenuti, direttamente o indirettamente, per tutti gli usi fatti dai Vinai della composizione soggetta a violazione. La richiesta che viene qui fatta è quella che la Corte ordini ai Convenuti di restituire questa contabilità relativa a questi profitti e un credito costruttivo a vantaggio del Querelante in relazione ai suddetti profitti.

58. In alternativa, il Querelante ha diritto ai danni statutari, ai sensi del 17 U.S.C. §504(c), nella cifra di $150, per ogni Convenuto e per ogni violazione dell'Opera del Querelante, per la suddetta violazione intenzionale dei Convenuti del copyright del Querelante, o ad altre cifre che potrebbero esse idonee come stabilito dal 17 U.S.C. 504(c).

59. Il Querelante ha inoltre diritto ad un rimborso per la parcella del suo legale e per tutti i costi sostenuti ai sensi del 17 U.S.C. 505.

60. Come conseguenza diretta e immediata degli atti e dei comportamenti descritti, il Querelante ha subito e continua a subire ingiurie sostanziali e per questo motivo dichiara, a meno che non venga imposto ed impedito da questa Corte, che i Convenuti continueranno a violare i diritti del Querelante relativi all'Opera coperta da Copyright del Querelante. Il Querelante ha inoltre diritto al rilascio di un'ingiunzione permanente contro i Convenuti, e ognuno di loro, per essere coinvolti in atti indebiti, come asserito in questa Querela.

## ACCUSA IV
## VIOLAZIONE DELLA LEGGE COMUNE DEL COPYRIGHT NELL'OPERA COPERTA DA COPYRIGHT DEL QUERELANTE
### (Il Querelante contro tutti i Convenuti)

61. Il Querelante riasserisce ed incorpora con riferimento a tutte le accuse di questa Querela con la stessa forza ed intenzione così come ribadito finora.

62. La composizione originale e la registrazione del suono di Abu del Querelante sono oggetto di protezione secondo la legge comune sul copyright secondo quanto stabilito dalla legge del New Jersey. Come proprietario di validi diritti sul copyright della composizione e della registrazione del suono di Abu, il Querelante possiede i diritti esclusi per la produzione, la copia, la vendita, la distribuzione e di tutto ciò da cui si può trarre vantaggio.

63. Il Querelante non ha né concesso né permesso ai Convenuti il diritto di usare, copiare o distribuire la composizione originale o di registrare il suono di Abu in nessuna maniera, inclusa la trasmissione digitale. La copia, la registrazione, l'esibizione e la divulgazione di Abu da parte dei Convenuti, come qui descritto, costituisce perciò una violazione di fatto dei diritti del copyright del Querelante.

64. Come conseguenza diretta e determinante della violazione arbitraria e irresponsabile del copyright da parte dei Convenuti, il Querelante ha diritto ad un risarcimento danni nella cifra che verrà stabilita al processo, così come al risarcimento di danni superiori (a quelli effettivamente arrecati).

65. La condotta dei Convenuti sta causando e, a meno che non venga imposto da questa Corte, continuerà a causare un danno irreparabile che non potrà essere pienamente risarcito o misurato in danni economici. Il Querelante non ha rimedi adeguati alla legge ed ha il diritto ad un rimedio ingiuntivo per proibire ai Convenuti altre violazioni dei diritti del Querelante sulla composizione originale e sulla registrazione del suono di Abu.

## INGIUNZIONI DI RILIEVO

PERCIO', il Querelante Max Goldberger chiede i seguenti:

A. Un giudizio in merito al 17 U.S.C. 501 che i Convenuti abbiano violato il copyright di Abu del Querelante;

B. La presentazione di un provvedimento ingiuntivo permanente secondo il 17 U.S.C. 502 che imponga ed impedisca ai Convenuti, ai loro uffici, direttori, agenti, collaboratori, impiegati e a tutte quelle persone che abbiano rapporti o che agiscano di concerto con essi, di compiere ulteriori violazioni dell'Opera con Copyright del Querelante, direttamente o indirettamente, tramite l'uso, la vendita, l'offerta di vendita, l'autorizzazione o l'offerta di autorizzazione, la divulgazione, la distribuzione e tutto ciò che può derivarne;

C. La presentazione di un'ingiunzione che sequestri o imponga la distruzione di tutti gli articoli soggetti a violazione e di tutto ciò che ne deriva, come stabilito nel 17 U.S.C. 503;

D. Un verdetto che stabilisca che la violazione compiuta dai Convenuti fu intenzionale e un giudizio che possa quantificare in termini economici questa violazione deliberata e intenzionale, secondo quanto stabilito nel 17 U.S.C. 504;

E. La contabilizzazione di tutti i profitti dei Convenuti attribuibili alla violazione, includendo sia i profitti diretti che quelli indiretti sotto forma di vendite, trasmissione di vendita e di licenze delle opere violate e di tutto ciò che ne deriva, secondo quanto stabilito nel 17 U.S.C. § 504;

F. Un rimborso relativo al danno effettivo subito dal Querelante e tutti gli addizionali profitti dei Convenuti, secondo quanto stabilito dal 17 U.S.C. 504;

G. Un rimborso relativo alla parcella dei legali del Querelante, alle spese e ai costi sostenuti per intraprendere questa azione legale;

H. Un rimborso al Querelante per tutti i vari ed eventuali provvedimenti che questa Corte ritenga giusti ed appropriati alle circostanze.

DATA: 31 luglio 2017

In fede

Ari Goldberger, Esq
Jason Schaeffer, Esq
ESQwire.com, P.C.
1908 Marlton Pike East
Cherry Hill, NJ 08003
(856) 874-9652
(856) 874-9182 fax
ari@esqwire.com


Testo email: Nuovo

ACCERTAMENTO

Io, Max Goldberger, qui certifico:

1. Di essere il creatore della composizione originale Abu, e il Querelante in questa azione;
2. Di aver esaminato la seguente Querela;
3. Di aver verificato sotto pena di falsa testimonianza che i fatti descritti in questa Querela corrispondono al vero e che sono riportati nel pieno delle mie conoscenze.

(Eseguito il 31 luglio 2017 a Manhattan, NYC

Da Max Goldberger)

Email secured by Check Point (email protetta da checkpoint)

**REPERTO A**



**REPERTO B**



## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = goldberger, max
Search Results: Displaying 1 of 4 entries



*Abu*

**Type of Work:** Music
**Registration Number / Date:** PAu003760369 / 2015-03-10
**Application Title:** Abu
**Title:** Abu
**Description:** Compact disc.
**Copyright Claimant:** Max Goldberger. Address: 35 Cameo Drive, Cherryhill, NJ, 08003.
**Date of Creation:** 2014
**Authorship on Application:** Max Gold, pseud. of Max Goldberger, 1996- (author of pseudonymous work); Citizenship: United States. Authorship: music.
**Copyright Note:** C.O. correspondence.
**Names:** Goldberger, Max, 1996-
Gold, Max, pseud.



| Save, Print and Email (Help Page) | |
| --- | --- |
| Select Download Format: Full Record ▼ | Format for Print/Save |
| Enter your email address: | Email |

**REPERTO C**



**REPERTO D**

## I. Attestazioni

Sono nato a Königs Wusterhausen, nella Repubblica Democratica Tedesca, e ho studiato presso il Liceo Statale Musicale a Wernigerode come membro del Coro Giovanile della Radio. Ho studiato composizione e piano al Conservatorio musicale "Carl Maria von Weber" a Dresda dal 1990 al 1994, ottenendo un Diploma. Ho ricevuto il Master of Music Degree nel 1996 presso lo Sheperd School of Music alla Rice University di Houston, Texas. Dal 1996 al 1999 ho perseguito i miei studi di composizione alla Manhattan School of Music di New York City, dove sono stato candidato per il Dottorato di Arti musicali. Nell'autunno del 1999, sono stato Ricercatore a contratto al Conservatorio dell'Università nazionale di Seoul nella Repubblica Coreana. Ho frequentato corsi di perfezionamento in composizione e accompagnamento vocale in Germania, Austria, Repubblica Ceca e Stati Uniti.

Ho insegnato Accompagnamento vocale al Conservatorio di Musica e Teatro di Rostock, Germania durante il semestre estivo 2000. Nell'autunno del 2000, mi sono unito al corpo docente di materie teoriche della Manhattan School of Music come membro di facoltà full-time. Nel 2005, sono diventato membro del corpo docente di composizione e sono stato nominato capo dipartimento di materie teoriche. Sono stato anche professore ospite e relatore in università e conservatori in Cina (Pechino, Shenyang, Changchun), Colombia (Bogotà, Medellin), Germania (Berlino, Dresda, Lipsia, Magdeburgo, Rostock), Italia (Roma), Korea (Seoul), Russia (Mosca) e Stati Uniti (Baltimora, Brooklyn, Hempstead, New York, Oberlin, Princeton).

Ho ricevuto numerosi premi, borse di studio, riconoscimenti (il primo premio nel Concorso Internazionale per la Composizione Corale a Dresda, Germania, tra gli altri) sia in Europa che negli Stati Uniti. Le mie pubblicazioni includono composizioni e articoli analitici (Verlag Kamprad Alternberg, Abundant Silence Publishing Denver, Schott Music International Mainz, Guitar Review New York, Red Light Press New York, Carus Verlag Stuttgart, Edition Music Contact Werdau, *Ashgate Research Companion* Surrey/UK). I miei arrangiamenti e composizioni sono state trasmessi per radio (Bavarian Radio BR, German Radio DF, German Culture Radio DRK, Middle German Radio MDR, North German Radio NDR, West German Radio WDR, WQXR) e television (ARD, Second German Television ZDF, Königs Wusterhausen Radio KWTV), e pubblicati su CD delle etichette Bayrischer Rundfunk, Deutsche Schallplatten, New Focus, OehmsClassics, Phonica, Talanton e Rachel Payne.

Sono attivamente un compositore, pianista, accompagnatore vocale ed educatore. Mi sono esibito in molte sedi prestigiose (ad esempio, Weill Recital Hall, Zankel Hall a Carnegie Hall, e Park Avenue Armory di New York, Semper Opera House di Dresda, Cathedral di Coventry) e festival in Austria, Belgio, Bulgaria, Croazia, Repubblica Ceca (Ostrava Days of New Music), Inghilterra, Francia, Germania (Middle German Radio MDR Music Summer Festival, Days of Contemporary Music Dresda), Grecia, Islanda, Italia, Lettonia, Lussemburgo, Norvegia, Romania, Russia, Spagna, Uzbekistan, China (Beijing Modern Music Festival), Korea del Sud, Colombia e Stati Uniti. I miei arrangiamenti e composizioni sono stati eseguiti in tutta Europa, Asia e America da solisti celebri (Miranda Cuckson, Dan Lippel), ensemble di musica da camera (ICE Ensemble New York, Ensemble courage Dresda), ensemble vocali (Singer Pur Munich, Amarcord Lipsia, Calmus Lipsia), cori (Radio Choir Berlin, RIAS Chamber Choir Berlin, Dresden Chamber Choir) e orchestre (Janacek Philarmonic Orchestra Ostrava, Dresden Baroque Orchestra, Sinfonietta Dresda).

Ulteriori informazioni possono essere trovate su www.reiko.fueting.de

## II. Progetto e metodologia

Mi è stato chiesto dallo studio di avvocati Greenberg & Lieberman LLC di determinare se il brano *How we party* di REHAB & VINAI ha preso materiale originale dalla composizione *ABU* di Max Gold senza permesso e merito.

Una delle mie aree di competenza è l'analisi musicale, un'area nela quale insegno a livello universitario (Manhattan School of Music, così come conferenze e presentazioni in altri conservatori musicali, università e convegni) e pubblico (articoli analitici in pubblicazioni teoriche-musicali). L'analisi musicale esamina una composizione musicale e considera i suoi parametri (come tono, melodia, armonia, ritmo, metro, dinamica, timbro, orchestrazione) indipendentemente e obiettivamente. La procedura cerca di estrapolare i principi sui quali è basata la musica. Sostanzialmente, questi parametri musicali sono legati alla forma musicale della composizione. Applico queste procedure analitiche al mio confronto tra *ABU* e *How we party* focalizzandomi sui seguenti parametri musicali:

1 – Tono

      L'analisi del tono esamina gli intervalli melodici, il profilo della melodia e la sua forma.

2 – Armonia

      L'analisi armonica esamina lo strato armonico sottostante che accompagna la melodia. L'analisi è comunemente fatta con numero romani.

3 – Ritmo

      L'analisi ritmica esamina i valori ritmici specifici di una melodia.

4 – Metro

      L'analisi metrica esamina la relazione dei valori ritmici con la metrica.

5 – Forma

      L'analisi formale collega tali aspetti al tempo e allo svolgimento del materiale.

Altri aspetti musicali importanti sono:

      Tempo, chiave, trama, registro, momenti caratteristici, svolgimento del materiale, forma.

Confronterà sia le composizioni obiettivamente prima di fare ogni tipo di conclusione.

Sia *ABU* che *How we party* esistono solo sotto forma di registrazioni. Non c'è partitura musicale. Ho ascoltato entrambe le composizioni numerose volte. Ho altresì trascritto alcuni elementi musicali su notazione musicale, in modo da creare anche una rappresentazione visiva della musica, che facilita ogni tipo di comparazione.

### III. Discussione analitica

#### 1. Tempo

Per tempo si intende la distanza tra battiti fermi, definiti anche battute. Il Tempo è rappresentato da un numero che indica il numero di battute al minuto. Il metronomo tradizionale varia tra 40 e 208, creando un totale di 39 gradi di tempo (40, 42, 44, ecc.). Metronomi elettronici moderni (come le app) varia da un minimi di 30 a un massimo di 250, con un totale di più di 220 gradi di tempo (30, 31, 32, ecc.).

Il tempo di *ABU* è un'indicazione di metronomo di un quarto equivalente a 128 (MM = 128), che si può tradurre in 128 battute al secondo.

Il tempo di *How we party* è un'indicazione di metronomo di un quarto equivalente a 128 (MM = 128), che si può tradurre in 128 battute al secondo.

Il tempo di *ABU* è identico al tempo di *How we party.* Con il numero totale di tempi possibili superiore a 220, il tempo identico delle due composizioni è un aspetto impressionante.

#### 2. Chiave

La tonalità è un sistema basato su scale composte da sette note. Le due scale trovate nella tonalità sono la scala minore e maggiore. All'interno della tonalità, ci sono dodici chiavi maggiori e dodici chiavi minori, per un totale di ventiquattro. All'interno del sistema di accordatura del temperamento equabile – standard moderno – tutte le 24 chiavi hanno il medesimo suono salvo per il loro diverso contenuto tonale. La musica vocale spesso diverse chiavi a causa della loro impraticabilità riguardo alla gamma vocale umana. La musica non vocale, specialmente la musica generata non da strumenti ma da tecnologia, non esclude le chiavi allo stesso modo. Di conseguenza, il tempo identico di entrambe le composizioni è anche un aspetto impressionante.

La chiave di *ABU* è fa diesis minore.

La chiave di *How we party* è fa diesis minore.

La chiave di *ABU* è identica alla chiave di *How we party.* Con il numero totale di possibili chiavi uguale a 24, la chiave identica delle due composizioni è un aspetto impressionante.

#### 3. Motivo principale

Un motivo è la più piccola unità musicale. Consiste principalmente di una collezione di note con un ritmo distintivo (contenuto tonale contro contenuto ritmico/struttura metrica). La più vicina unità musicale superiore è una melodia, che consiste di vari motivi, che sono principalmente variazioni – e occasionalmente contrasti – del motivo principale.

Entrambe le composizioni sono quasi esclusivamente basate su una melodia principale. Il reperto 1A rappresenta la melodia principale di *ABU.* Il reperto 1B rappresenta la melodia principale di *How we party.*

Reperto 1A: *ABU*



Reperto 1B: *How we party*



Ogni melodia è basata su un motivo principale.

Reperto 2A: *ABU*



Reperto 2B: *How we party*



### 3.1. Il contenuto tonale del motivo principale

Il contenuto tonale di motivo principale di *ABU* è esteso. Consiste di tredici note e quattro toni. Il suo registro è la seconda ottava sopra il do centrale. La sua gamma è stretta e delinea principalmente un moto discendente. Il motivo inizia sul grado della settima scala e finisce sul grado della quarta scala. Il modo è interamente a scala. Il suo aspetto più distintivo è la nota ripetuta al centro (sei volte).

Il contenuto tonale del motivo principale di *How we party* è esteso. Consiste di quattordici note e quattro toni. Il suo registro è la seconda ottava sopra il do centrale. La sua gamma è stretta e delinea principalmente un moto discendente. Il motivo inizia sul grado della settima scala e finisce sul grado della quinta scala. Il modo è interamente a scala. Il suo aspetto più distintivo è la nota ripetuta al centro (sei volte), che è ripetuto da un'altra ripetizione della stessa nota successivamente nel motivo (tre volte).

Le prime dieci note del motivo sono identiche. L'undicesima e la dodicesima nota di *ABU* corrispondono alla tredicesima e alla quattordicesima nota di *How we party*. Lo spostamento di posizione è il risultato della seconda ripetizione della nota do diesis. Il fatto che *How we party* non duri 15 note (13 note più le due ripetute della seconda ripetizione) è un risultato della diversa nota finale (cadenza). *ABU* finisce sul grado della quarta scala (sottodominante), mentre *How we party* finisce sul grado della quinta scala (dominante), la penultima nota del motivo principale di *ABU*.

Il seguente reperto illustra le deviazioni tra entrambi i motivi basate su stadi analitici. Gli stadi analitici sono una procedura analitica sviluppata dal musicologo tedesco Ulrich Siegele. Questa procedura ricrea gli stadi evolutivi che si focalizzano su specifici parametri musicali. La procedura permette la dimostrazione del grado di relazione attraverso i diversi stadi analitici. Alcuni stadi analitici rappresenterebbero una relazione vicina, mentre molti stadi analitici rappresenterebbero una relazione distante.

Lo Stadio 1 è il motivo principale di *ABU* con le sue caratteristiche discusse precedentemente.

Lo Stadio 2 include la seconda ripetizione della nota do diesis (ora tre volte).

Lo Stadio 3 elimina l'ultima nota. E' il motivo principale di *How We Party* con le sue caratteristiche come discusso in precedenza.

C'è solo uno stadio evolutivo (analitico) tra entrambi i motivi. Ciò prova che entrambi i motivi hanno un legame estremamente prossimo. Il contenuto tonale del motivo di *ABU* è quasi identico al contenuto tonale del motivo di *How We Dance*. Con un numero essenzialmente infinito di possibili motivi tonali, il quasi identico motivo tonale di entrambe le composizioni è un aspetto impressionante.

La differenza interessante è la differenza nella cadenza dell'ultima nota. Finire sul grado della quinta scala – quella dominante – è molto comune nella musica tonale: il termine musicale è "semi-cadenza". Finire sulla quarta scala – quella sottodominante – non è molto comune nella musica tonale: non c'è un termine musicale per questo tipo di cadenza. Finendo il motivo nel grado della quinta scala, il motivo diventa molto generico. Come dimostrato in seguito, questa idea di creare una superficie musicale più generica esiste ripetutamente ed è perciò stabilita come principio.

Reperto 3A: Stadio 1: *ABU*



Reperto 3B: Stadio 1



Reperto 3B: Stadio 3: *How We Party*



### 3.2. Il contenuto ritmico del motivo principale

Il ritmo del motivo principale di *ABU* consiste quasi interamente di ottave, eccetto per le prime due semicrome.

Il ritmo del motivo principale di *How We Party* consiste quasi interamente di ottave, eccetto per le prime due semicrome. Il motivo è seguito da una pausa.

Il contenuto ritmico del motivo di *ABU* è quasi identico al contenuto ritmico del motivo di *How We Party*, eccetto che il motivo di *How We Party* è più lungo di una nota. Con un numero praticamente infinito di possibili motivi ritmici, il motivo ritmico quasi identico di entrambe le composizioni è un aspetto impressionante.

Reperto 4A: *ABU*



Reperto 4B: *How We Party*



### 3.3. La struttura metrica del motivo principale

Il motivo di *ABU* dura sei battute. Le semicrome sono posizionate nella prima battuta, il battere. Ogni battuta dura una semiminima. Le battute sono differenziate come battute forti e deboli alternate.

Il motivo di *How We Party* dura otto battute, che possono essere divise in due misure di quattro battute l'una. La differenza nella lunghezza è un risultato del numero differente di note ma anche della posizione delle due semicrome, che sono posizionate tra la battuta 1 e 2. La prima metà di ogni battuta è considerata forte, mentre la seconda metà di ogni battuta è considerata debole.

Il metro di *ABU* è diverso dal metro di *How We Party*.

Reperto 5A: *ABU*



Reperto 5B: *How We Party*



La discrepanza tra un ritmo identico e un metro diverso è interessante. Il risultato della presentazione dello stesso ritmo in un diverso ambiente metrico è il secondo esempio di creazione di una più generica superficie musicale ritmica/metrica. Naturalmente, e perciò comunemente, le due semicrome sarebbero posizionate su una posizione debole (come figura in levare), che è ciò che fa *How We Party*.

Oltre alla diversa posizione del motivo principale, c'è un terzo esempio di questo principio. In *ABU*, ogni frase dura sei battute. Le battute sono distinte in battute forti e deboli, e messe in coppia da due. Il numero di coppie è tre, un numero dispari, e di conseguenza non adatto interamente al ballo. *How We Party* usa frasi che durano otto battute. Qui il numero di coppia è quattro, un numero pari, che è adatto al ballo. Di conseguenza, la lunghezza delle frasi è anche molto generico. Le minori differenze tra *ABU* e *How We Party* sono basate su un principio, che punta a creare una superficie musicale più generica.

### 4. Forma della melodia principale

*ABU* è basata su una melodia che dura quattro misure, divise in (1+1) + (1+1). Tutte e quattro le misure sono strettamente correlate (A). Le Misure 1 e 3 (A1 e A2) sono quasi identiche (la prima nota manca in A2). La Misura 4 è una variazione della misura 2 (A'1 e A'2). La cadenza nella misura 2 è una semi-cadenza (che finisce con la dominante), mentre la cadenza nella misura 4 è una cadenza autentica (finendo con la tonica). La struttura della frase è perciò 2+2, in cui ogni frase misura 2 consiste di due motivi. E' un periodo parallelo.

*How We Party* è basata su una melodia che dura quattro misure, divise in (2+2). A1 finisce con una semi-cadenza, A2 (variazione di A1) finisce con una cadenza autentica. A2 rallenta il ritmo verso la fine, che è un caso per A'1 e A'2 di How We Dance. La struttura della frase è perciò 2+2, un periodo parallelo.

La forma della melodia principale di *ABU* è identica alla forma della melodia principale di *How We Party*, eccetto che la melodia principale di *ABU* consiste di quattro motivi, mentre la melodia principale di *How We Party* consiste di due motivi.

Reperto 6A: *ABU*



Reperto 6B: *How We Party*

Un quarto esempio del principio usato per creare una superficie musicale più generica sarebbe l'omissione della frase A' di *ABU* in *How We Party*. A' di *ABU* è basata sulla scala armonica minore , rara nella musica occidentale, ma comune nella musica mediorientale. La frazione della scala armonica minore è molto caratteristica (proprio come la mancanza delle semicrome e delle frasi a sei battute). La sua omissione in *How We Dance* crea una superficie musicale più generica.

## 5. Armonia

La chiave di entrambe le composizioni è fa diesis minore. In *ABU* la melodia principale è accompagnata solo da un accordo: l'accordo tonico (fa diesis minore). *ABU* è basata su una sonorità a due voci che delinea la melodia e una linea di basso senza alcuna voce intermedia. La linea di basso delinea una discendente, iniziando alla quinta e finendo al grado della seconda scala. Ciò nonostante, il ritmo armonico è interamente statico dato che è coinvolto un solo accordo.

Anche in *How We Party,* la melodia principale è accompagnata da un solo accordo: quello tonico (fa diesis minore). *How We Party* è anche basato su una sonorità a due parti che delinea la melodia e una linea di basso senza nessuna voce intermedia. La linea di basso non cambia dato che consiste interamente della radice della triade tonica. Questa caratteristica è il quinto esempio per cui *How We Party* è più generica di *ABU* dato che usa una linea di basso più semplice per la stessa armonizzazione.

L'armonizzazione della melodia principale di *ABU* è identica all'armonizzazione della melodia principale di *How We Party.* Con un numero infinito di armonizzazioni, l'armonizzazione identica della melodia principale dei due brani è un aspetto sorprendente.

La sonorità della melodia principale di *ABU* è identica alla sonorità della melodia principale di *How We Party.* Con un numero infinito di possibili sonorità, l'identica armonizzazione della melodia principale dei due brani è un aspetto sorprendente.

Reperto 7A: *ABU*



Reperto 7B: *How We Party*

## 6. Il movimento *glissando*

*ABU* include un gesto molto caratteristico che appare frequentemente: un *glissando* crescente. Il *glissando* può essere un *glissando* di rumore bianco o un *glissando* di tono. Il numero di eventi può essere visto nella tabella sotto "Forma e Svolgimento del Materiale".

*How We Party* include anche un *glissando* crescente che appare frequentemente. Il *glissando* può essere un *glissando* di rumore bianco o un *glissando* di tono. Il numero di eventi può essere visto nella tabella sotto "Forma e Svolgimento del Materiale".

Gli eventi frequenti di un *glissando* crescente in entrambi i brani è un aspetto sorprendente.

## 7. Forma e Svolgimento del Materiale

ABU è principalmente basato su la sua melodia principale. La melodia è presentata in diversi modi. E' presentata frammentata ed è presentata completa. E' anche presentata con o senza accompagnamento (linea di basso e ritmo). Il materiale non si evolve né si sviluppa.

La forma del brano è binaria, con due sezioni identiche. Ogni sezione è divisa in due sottosezioni. Ogni sottosezione afferma la melodia principale tre volte: un numero irregolare di affermazioni.

**L**

0:00 – 0:20         **Introduzione** (glissando di rumore bianco up e down)

**A**

0:20 - 0:31   Melodia principale, frammentata, senza linea di basso, senza ritmo (glissando rumore bianco up)

0:31 – 0:42   Melodia principale, con linea di basso, senza ritmo (glissando rumore bianco up)

0:42 – 0:54   Melodia principale, con linea di basso, con ritmo

0:54 – 1:11         **Ponte** (glissando tono up)

**B**

1:11 – 1:22   Melodia principale, senza linea di basso, senza ritmo

1:22 – 1:34   Melodia principale, senza linea di basso, con ritmo differente

1:34 – 1:45   Melodia principale, senza linea di basso, con ritmo (glissando tono up)

**II**

1:45 – 1:50         Ponte (glissando rumore bianco up)

**A**

1:50 – 2:01   Melodia principale, frammentata, senza linea di basso, senza ritmo (glissando rumore bianco up)

2:01 – 2:13   Melodia principale, con linea di basso, senza ritmo (glissando rumore bianco up)

2:13 – 2:24   Melodia principale, con linea di basso, con ritmo

2:24 – 2:41         **Ponte** (glissando tono up)

**B**

2:41 – 2:52   Melodia principale, senza linea di basso, con ritmo

| | |
|---|---|
| 2:52 – 3:03 | Melodia principale, senza linea di basso, con ritmo differente |
| 3:03 – 3:14 | Melodia principale, senza linea di basso, con ritmo (glissando tono up) |
| 3:14 – 3:21 | **Conclusione** (glissando rumore bianco down) |

*How We Party* è anche principalmente basata sulla sua melodia principale. La melodia è presentata in modi diversi. E' presentata frammentata, ed è presentata completa. E' anche presentata con o senza accompagnamento. Il materiale non si sviluppa né si evolve.

La forma del brano è ternaria, con la prima e la terza sezione identiche. La prima sezione afferma la melodia principale una volta, la seconda e la terza sezione affermano la melodia principale due volte.

La forma include una sezione basata su diverso materiale motivico, una sezione ponte che dura da 1:51 a 2:05. Condivide lo stesso tempo e chiave con il resto della composizione, ma il materiale motivico non è connesso.

| | |
|---|---|
| 0:00 – 0:35 | **Introduzione** (glissando up) |
| **I** | |
| 0:35 – 0:49 | Melodia principale |
| 0:49 – 1:05 | **Ponte** (glissando up) |
| **II** | |
| 1:05 – 1:21 | Melodia principale |
| 1:21 – 1:35 | Melodia principale (glissando up) |
| **Ponte** | |
| 1:31 – 1:51 | Ponte 1 |
| *1:51 – 2:05* | *Ponte 2* |
| 2:05 – 2:20 | Ponte 3 (glissando up) |
| **III** | |
| 2:20 – 2:35 | Melodia principale |
| 2:35 – 2:50 | Melodia principale (glissando up) |

**8. Il principio della creazione di una superficie musicale più generica**

Vorrei riassumere tutti gli esempi del principio ricorrente di creare una superficie musicale generica.

a. La nota-cadenza del motivo principale

b. La posizione delle due semicrome all'inizio del motivo principale

c. La lunghezza del motivo principale

d. L'omissione del grado della settima scala rialzata

e. La linea di basso semplice

La frequenza di volte in cui avvengono le dimostrazioni di tale principio crea un livello molto alto di consistenza.

## 9. Riassunto e Conclusione

I seguenti aspetti musicali sono identici sia in *ABU* che in *How We Party*:

1. Tempo

2. Chiave

3. Registro della melodia principale

4. Forma della melodia principale

5. L'uso frequente del *glissando*

I seguenti aspetti musicali sono quasi identici sia in *ABU* che in *How We Party*:

1. Il contenuto tonale del motivo principale

2. Il contenuto ritmico del motivo principale

I seguenti aspetti musicali sono diversi sia in *ABU* che in *How We Party*:

1. Il metro

2. Il numero di motivi della melodia principale

Gli aspetti musicali identici sono maggiori.

Gli aspetti quasi identici sono estremamente correlati. La loro relazione può essere dimostrata con un solo stadio evolutivo.

Gli aspetti musicali diversi sono tutti basati sullo stesso principio: il principio di creazione di una superficie musicale generica.

Di conseguenza, concludo dicendo che *How We Party* usa materiale musicale originale da *ABU*. I creatori di *How We Party* hanno trasformato la melodia originale di *ABU* in un modo che presenta lo stesso materiale in un modo più generico e di conseguenza, accessibile e immediato. Allo stesso modo, *How We Party* presenta il materiale con una superficie più sofisticata.

1. La sonorità generale include molti più strati e maggior materiale diversificato (per esempio, il parlato), mentre la sonorità di *ABU* è abbastanza semplice.

2. Il movimento glissando ascendente è molto più complesso, mentre *ABU* presenta il *glissando* sia come tono *glissando* o *glissando* rumore bianco.

3. Il livello di intensità è maggiore.

Vedo la relazione di *How We Party* con *ABU* come quella di un remix. Usa lo stesso materiale principale e lo presenta in un modo diverso (più sofisticato e accessibile). *How We Party* include anche una "traccia" di materiale originale, la sezione ponte che dura da 1:51 a 2:05. Questo materiale non è fondamentalmente collegato alla melodia principale. Appare inoltre solo una volta, e di conseguenza, ha la natura di una interpolazione.